THOE, Administrator, Appellant, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

*September 20—October 16, 1923.*

*Trial: Statute prohibiting directed verdicts: Constitutionality: Railroads: Accidents at grade crossings: Contributory negligence.*

1. Plaintiff's intestate, who paid no attention to his surroundings and drove his automobile onto a railroad track without looking or listening for an approaching train, is guilty of contributory negligence, and, upon his being killed by a passing train, plaintiff is not entitled to recover, even though the railroad company was negligent in the operation of its train.

2. The legal sufficiency of evidence given upon the trial is ordinarily tested (1) by demurring to the evidence, (2) by motion for a nonsuit, or (3) by motion to direct a verdict.

3. From the earliest times, both under the common law of England and of this country, the right of a suitor to test the legal sufficiency of the evidence offered against him has been recognized, and the exercise of the authority by the court to determine the matter, which has never been challenged, is of the essence of judicial power.

4. The jury is the sole judge of the sufficiency of the evidence in fact; the court is the sole judge of the sufficiency in law. With a single exception, contained in sec. 3, art. I, Const., which lodges with the jury the power to determine questions of law as well as questions of fact in actions for criminal libel, the entire judicial power of the state under our constitution is vested in the courts.

5. In sec. 2857a, Stats., as amended by ch. 31, Laws of 1923, providing that in no case shall a verdict be directed where a jury has been selected and testimony been taken, except upon consent and stipulation of the parties or for error, in which case a new trial shall be had, the exceptions have no application, since the verdict upon consent and stipulation is not a directed verdict and because verdicts are not directed for error, the statute meaning that in no case where a jury has been selected shall a court direct a verdict.

6. Sec. 2857a as amended is invalid as an attempted legislative exercise of judicial power to determine in every case the legal sufficiency of evidence to go to the jury, and is therefore in contravention of sec. 2, art. VII, Const., lodging the judicial power of the state in the courts; and a contention that the statute merely postpones the exercise of the judicial function is without merit.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

On December 22, 1921, Thomas Hermanson, plaintiff's intestate, was instantly killed on a railroad crossing by the defendant's west-bound passenger train, while driving an automobile south on the highway in the village of Wyocena. This action is brought to recover damages therefor. At the close of the testimony the court directed a verdict for the defendant, and from the judgment entered thereon plaintiff appeals.

For the appellant there was a brief by *H. S. Hendrickson,* attorney, and *Stroud & Stroud* and *H. E. Andrews* of Portage, of counsel, and oral argument by *Perry C. Stroud.*

For the respondent there was a brief by *H. J. Killilea* of Milwaukee and *J. L. Mahoney* of Portage, and oral argument by *Mr. Killilea.*

A brief for the State as *amicus curiæ* was filed by the *Attorney General* and *Robert M. Rieser,* deputy attorney general.

ROSENBERRY, J.    It appears without dispute that when the deceased reached a point 100 feet north of the railway track he had an unobstructed view to the east up the track, from which direction the train was approaching, of three quarters of a mile, and from that point until he reached the track there was nothing to prevent his having seen the train had he looked.   The deceased approached the railroad track at a speed of about ten to twelve miles an hour.   The bell on the locomotive engine was ringing and the whistle had been blown for the crossing.   The negligence charged in the complaint was that defendant was running its train at a great and negligent rate of speed, exceeding thirty miles per hour.   The evidence showed that the deceased paid no attention whatever to his surroundings and drove onto the railroad track without either looking or listening for an approaching train.

Under the repeated decisions of this court the deceased

was clearly guilty of contributory negligence, and plaintiff was not, upon any theory of the case, admitting all the facts proven by him to be true, entitled to recover. *Twist v. M., St. P. &. S. S. M. R. Co.* 178 Wis. 513, 190 N. W. 449; *Mc-Millan v. C., M. & St. P. R. Co.* 179 Wis. 323, 191 N. W. 510, and cases cited.

In that state of the evidence it was the duty of the court to direct a verdict. This is so plain that we shall not further discuss this aspect of the case.

It is the contention of the plaintiff that the court was without power or authority to direct a verdict by reason of the provisions of sec. 2857a, Stats. This section was amended by ch. 31 of the Laws of 1923, the amendment being printed in bold-face type.

"Section 2857a. Whenever in an action tried before a jury all the parties to the action shall, without reservation, move the court to direct a verdict, such motion shall, unless otherwise directed by the court before the discharge of the jury, be considered as equivalent to a stipulation by the parties waiving a jury trial and submitting the entire case to the court for decision of the facts as well as the law; *but in no case where a jury has been selected for the trial of a cause and any testimony been taken or evidence introduced, shall a verdict be directed by the trial judge, except upon consent and stipulation of all parties to the cause, or for error, in which case a new trial shall be had."*

The language of the amendment is not clear and embodies some confusion in terms. Where a verdict is directed upon consent and stipulation of the parties, it cannot be said in any proper sense of the term to be a directed verdict at all. It is to all intents and purposes a settlement of the controversy by the parties. In such an event there remains nothing for the court to do but to give effect to the stipulation according to its terms. Nor are verdicts directed for error, and for that reason we cannot conceive for what purpose the words "or for error, in which case a new trial shall be had" are embodied in the amendment. Verdicts are

set aside for error, not directed. The statute, therefore, is held to mean that in no case where a jury has been selected shall a court direct a verdict, the exceptions having no application for the reasons stated. Verdicts are never directed in any case except where testimony has been taken and evidence introduced. The legal effect of the pleadings is tested by an appropriate motion upon the pleadings, not by a motion to direct a verdict.

It is contended by the defendant that the amendment is void because in violation of the constitution in that it is an attempt by the legislature to diminish the quantum of judicial power reposed by the constitution in the court. It is contended by the plaintiff that it merely postpones action by the court and is therefore valid as a statute regulating procedure.

A solution of this important question requires us to consider somewhat in detail the nature and legal effect of a motion to direct a verdict. The plaintiff in an action is not entitled to recover merely because he introduces testimony or evidence upon the trial. In order to entitle him to recover he must introduce evidence which is legally sufficient to sustain a verdict and warrant a judgment in his behalf. In other words, he must produce evidence which if accepted as true is sufficient in law to sustain a recovery. Evidence offered upon a trial has two aspects, or, as is sometimes said, a twofold sufficiency—a sufficiency in law and a sufficiency in fact. From time immemorial in the common-law courts of this country and in England, it has been the duty and province of the court to determine the legal sufficiency of the evidence. The legal sufficiency of the evidence given upon the trial is ordinarily tested in one of three ways: (1st) by demurrer to the evidence; (2d) by motion for a nonsuit; and (3d) by motion to direct a verdict. A demurrer to the evidence is a method of raising the legal sufficiency of evidence not ordinarily resorted to in legal practice in this state, although it is common in other jurisdictions. See 38

Cyc. 1541, "B. Demurrer to Evidence," discussion and cases cited; 5 Wigmore, Evidence (2d ed.) p. 460, § 2495. For a discussion of its early history and development, see Thayer, Preliminary Treatise on Evidence, 234–239; 26 Ruling Case Law, p. 1064, § 72, and cases cited.

A demurrer to the evidence, in later practice at least, raised substantially the same questions as are raised by motion for a nonsuit. A judgment rendered, however, upon a demurrer to the evidence was *res judicata* (*Seckler v. Delfs,* 25 Kan. 159), differing in that respect from a judgment entered on nonsuit, which, generally speaking, is not conclusive upon the parties, although there are exceptions to the rule.

A motion for a nonsuit must be seasonably made by the defendant, and it is properly made when the plaintiff rests. Its distinctive feature is that it may be granted without prejudice, and if not upon the merits it does not conclude the plaintiff. Upon the trial a compulsory nonsuit cannot properly be granted where the evidence in any reasonable view thereof, giving the plaintiff the benefit of the most favorable inferences that can fairly be deduced therefrom, would support a verdict in his favor. *Kortendick v. Waterford,* 135 Wis. 77, 115 N. W. 331.

A motion to direct a verdict is made at the close of all the testimony. A judgment entered thereon is conclusive of the rights of the parties as to the subject matter of the action. It is the duty of the court to deny the motion if there is any credible evidence which most favorably considered and with the aid of all inferences which might reasonably be drawn therefrom tends to establish the liability of the party making the motion. *Kaley v. Van Ostrand,* 134 Wis. 443, 114 N. W. 817; *Gessner v. Roeming,* 135 Wis. 535, 116 N. W. 171.

The various methods of testing the legal sufficiency of the evidence to sustain a judgment in favor of the party against whom the motion is made have this common char-

acteristic: that the court is asked to determine whether or not, admitting all of the evidence against the party making the motion to be true and drawing all inferences which may reasonably be drawn therefrom in favor of the opposite party, the evidence is sufficient in law to sustain a judgment against the moving party. It cannot be disputed that from the earliest times, both under the common law of England and of this country, the right of a suitor to test the legal sufficiency of the evidence offered against him has been recognized, and the authority and power of the court to determine the matter has never been challenged.

In *Finkelston v. C., M. & St. P. R. Co.* 94 Wis. 270, 68 N. W. 1005, it was said:

"This court rigidly maintains, inviolably, the right of trial by jury, rejecting the rule that obtains in some jurisdictions, that if the evidence is such that a verdict in favor of one party would be set aside as contrary to the clear preponderance thereof, the court is warranted in directing the proper verdict, and upholds, as the law, that inferences from the evidence in the first instance should be drawn solely by the jury, except where, in any legitimate view of it, no reasonable inference can be drawn therefrom which will support a verdict other than one way. Then, the motion for a nonsuit or the direction of a verdict requires that disposition of the case, as a matter of right, which implies a judicial duty to grant it. Such disposition by no means trenches on the province of the jury, but is the exercise of a judicial function, essential to the due administration of justice."

It is clearly evident that the exercise by the court of the authority to make such a determination when properly called upon to do so is of the very essence of judicial power; that is, the power to determine under the law the rights of parties properly before it. Further exposition cannot make it plainer. The plaintiff in fact does not claim otherwise, but argues that the amendment referred to merely postponed the time of action and it is therefore valid as a legislative enactment regulating judicial procedure. There are two

cases which support that view. *Zimmerman v. C. & N. W. R. Co.* 129 Minn. 4, 151 N. W. 412; *First Nat. Bank v. Strauss* (N. Dak.) 194 N. W. 900.

In *Zimmerman v. C. & N. W. R. Co., supra,* the supreme court of Minnesota held without discussion that the statute there in question merely postponed the time for the exercise of the court's power and was therefore valid. The *Zimmerman Case* was followed in *First Nat. Bank v. Strauss,* the constitutionality of the North Dakota statute not being discussed. In Minnesota and North Dakota the whole matter has been subject to statutory regulation. The situation is therefore materially different than the situation in Wisconsin. Whether or not the legislative interference has been permitted to pass constitutional bounds we are not able to say. In any event the decisions are not helpful, as the matter here under discussion was apparently not pressed in either case—certainly not discussed in the decisions.

It is argued that under our practice as laid down in *Muench v. Heinemann,* 119 Wis. 441, 96 N. W. 800, either the plaintiff or the defendant may properly move for judgment notwithstanding the verdict, and that in such event, if there is no evidence sustaining liability of the party in whose favor the motion is made, the same question is presented as is presented by a motion to direct a verdict, and that therefore there is no invasion of the authority conferred upon the courts by the constitution, which provides:

"The judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace." Art. VII, sec. 2.

In *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, at p. 225 (119 N. W. 309, 120 N. W. 756), the court, speaking by Mr. Justice SIEBECKER, said:

"The powers conferred on courts and juries by these constitutional provisions were well defined in the established system of jurisprudence in this country at the time of their

adoption. This court interpreted these constitutional provisions as conferring on court and jury those well-defined powers as they existed and had been repeatedly exercised by court and jury under the common law."

The constitution of Wisconsin was adopted in 1848. The territorial supreme court held, at the July term, 1845, that "it was the province of the court to decide the legal question whether there was or not *any* evidence against the defendants named, and if there was no evidence against them to direct the jury to acquit in form." *Wood v. Folmer,* 1 Pin. 509.

It is apparent, therefore, that the motion to direct a verdict was in common use in the territorial courts prior to the adoption of the constitution. Names are not important. As before indicated, a motion to direct a verdict is simply one method of testing the legal sufficiency of the evidence. Whether it is called a demurrer to the evidence, a motion to direct a verdict, request for peremptory instruction, or what not, is immaterial. The thing involved is the power of the court to pass upon the legal sufficiency of the evidence.

Does the statute in question merely postpone the exercise of the court's power? What is the legal effect of submitting a case to the jury for its verdict? It is under all circumstances a determination by the court that the evidence is legally sufficient to warrant a finding by the jury in favor of either of the parties to the cause. As was said in *Chybowski v. Bucyrus Co.* 127 Wis. 332, 340, 106 N. W. 833:

"Where the evidence is sufficient only to give rise to mere conjecture in favor of the plaintiff, or to suggest merely a possibility of the truth being as claimed by him [citing cases], or the evidence in his favor is contrary to all reasonable probabilities, the jury are placed in a false position by being directed to determine upon which side are the major and controlling probabilities. The court in such circumstances, without a motion in that regard, should apply the law thereto and dispose of the litigation accordingly. Re-

fusal' in that regard, in face of a proper motion invoking judicial action, is no less than the denial of a right."

The statute says in legal effect that in every case where a jury has been sworn and evidence offered the evidence is conclusively presumed to warrant a finding in favor of either party; that in every case, no matter how conclusive the proof may be as to the ultimate right of either party, the court is powerless and the jury is authorized to find, if it chooses to do so, a verdict in favor of the party whose evidence may be wholly insufficient in law within the rule stated to sustain a judgment in his favor. If the power to determine the legal sufficiency of the evidence is a judicial power, then the legislature has exercised that power by determining in every case the legal sufficiency of the evidence to go to the jury. If this does not constitute a clear exercise of judicial power it is difficult to imagine a case where the judicial power can be invaded. At the close of the evidence the statute steps in and performs a function that has been the function of common-law courts from time immemorial. It is not sufficient to say upon a motion notwithstanding the verdict that the court may nevertheless grant judgment for one or the other of the parties and therefore it is a substitute for a motion to direct a verdict or for a motion for nonsuit, although that is a matter of grave doubt. See note L. R. A. 1916E, 828; note 12 L. R. A. N. s. 1021.

As was said in *Kiley v. C., M. & St. P. R. Co.* 138 Wis. 215, at p. 226 (119 N. W. 309, 120 N. W. 756):

"The powers of the court and jury in the administration of the law in those respects were distinct and well defined at the time of the adoption of our constitution and became vested in the court and jury by its provisions. They cannot be abrogated or modified by legislative action to the extent of impairing, in any degree, the judicial power. Under the constitution, courts have become vested with the judicial power to determine the questions of the legal sufficiency of the evidence to establish the rights of the parties at issue

and to apply the law to the facts when found, and this power cannot be withdrawn from them and conferred on juries."

Neither has the legislature power to declare in advance that the evidence is legally sufficient in every case. It may or it may not be. Whether it is or not is for the court to determine in the exercise of the powers conferred upon it by the constitution. A motion to direct a verdict calls for the exercise of legal judgment by applying the law to the facts of each case. It cannot be done wholesale by legislative fiat.

The argument that justice is not thwarted because at some subsequent point in the course of the trial the court may nevertheless render judgment according to the rights of the parties is without weight. An infraction of the constitution is to be measured not by its size but by its character. If the exercise of judicial power may be thus diminished and limited, it is subject to further and other limitations.

It is urged that it is necessary, in order that mistrials may be avoided, for the verdict of the jury to be taken in every case. Under our practice the court may reserve its decision and take the verdict of the jury if the case is doubtful. A careful review of the decisions of this court shows that, compared with the whole number of cases heard, errors for misdirection of a verdict are comparatively rare, and in cases where they do occur the error is quite as often on the side of not directing a verdict as it is on the side of directing a verdict. The duties which under our system devolve upon the judges of our trial courts are not only highly important but very onerous. Their proper discharge calls for ability of the highest order as well as courage and clearness of vision. That these high responsibilities are so adequately met by trial judges in this jurisdiction should be a matter of great satisfaction to all. Perfection in trial or appellate courts will not be attained until human judgment attains infallibility. Litigants may prefer the natural sympathy and partiality of the jury to the cold, calm, dispassionate

judgments of the law. This, however, does not justify attempts to withdraw the power lodged by the constitution with the courts or warrant its exercise by the legislature. The jury system has maintained its vitality through many centuries, but it has never been thought wise to invest juries with judicial power. The jury is the sole judge of the sufficiency of the evidence in fact; the court is the sole judge of the sufficiency in law. With a single exception, contained in art. I, sec. 3, of the constitution, which lodges with the jury the power to determine questions of law as well as questions of fact in actions for criminal libel, the entire judicial power of the state under our constitution is vested in the courts.

No court has stood more steadfastly and consistently for an unimpaired right of jury trial than has this court. Pages might be filled with citations and quotations of expressions of the court. Those already cited characterize in the clearest possible language the attitude of the court in respect to jury trials and the duty of the court to preserve the right inviolate. We do not court controversy with a co-ordinate branch of the government; on the other hand, we do not deem it our duty, as a matter of deference or courtesy or upon any other consideration, to avoid the determination of questions properly presented by the record. The people of the state of Wisconsin, through the constitution ordained by them, have conferred upon the courts of this state the judicial power, which includes the power finally to construe, interpret, and apply the law in private as well as public matters. The constitution having confided this high prerogative to the courts, they would be plainly derelict in their duty if upon any pretense whatever they permitted the powers so confided to them to be exercised by other than judicial officers. There is evidence in some quarters of a growing conviction that our system of representative government in which the powers of government are divided is not adequate, and that the parliamentary system, which makes the voice

of the legislative branch supreme as in England, is better. Whether or not this conviction is in point of fact sound is a. debatable political question, but until the people in a constitutional manner have withdrawn from the courts or limited the courts in the exercise of the judicial power conferred upon them by the constitution, it is the solemn duty of every judge, as a sworn officer of the state, to maintain the boundaries of that power unimpaired. It may well be that courts have submitted with too much willingness and in some instances with supineness to legislative interference. Courtesy to a co-ordinate branch of the government can never excuse the performance of duty nor justify the violation of a solemn obligation. It is not supposed that the legislature acted with conscious impropriety in the enactment of ch. 31. Happily, in the history of this state, conflicts between the legislative and judicial branches have been infrequent—it may be said almost non-existent. The boundaries which separate the two fields are therefore shadowy and not well defined. It is the duty of the court to define them and see that they are respected.

Courts have not, as some people suppose, any option in the matter. The people through the constitution have vested in the courts certain powers and charged the court with the responsibility for the exercise of those powers. Every judicial officer takes an oath that he will support and maintain the constitution. He may not therefore yield to the demands of political expediency or express his personal political or economic convictions in the interpretation and application of the constitution and the laws made pursuant thereto. To consciously deviate upon any pretext whatever from the constitutional path is to violate the trust which the people have reposed in him. The judicial officer may not, therefore, reach this or that conclusion because at the moment it may seem wise and expedient so to do. He may not fritter or barter away the power committed to his hands. He has assumed a responsibility which must be dis-

charged with the utmost fidelity. For the reasons stated, ch. 31 is void as in contravention of the constitutional provision referred to. The judgment of the circuit court was right and must be affirmed.

*By the Court.*—It is so ordered.

CROWNHART, J., dissents.