IN the MATTER OF E.B., a child under the age of 18 years:
E.B., Appellant,†

v.

STATE of Wisconsin, Respondent-Petitioner.

Supreme Court

*No. 81–2020. Argued February 4, 1978.—Decided March 1, 1983.*

(Also reported in 330 N.W.2d 584.)

---

† Motion for reconsideration denied, without costs, on April 5, 1983.

For the respondent-petitioner the cause was argued by *Daniel J. O'Brien,* assistant attorney general, with whom on brief was *Bronson C. La Follette,* attorney general.

For the appellant there was a brief and oral argument by *Louis B. Butler, Jr.,* assistant state public defender.

WILLIAM G. CALLOW, J. This is a review of a decision[1] of the court of appeals which reversed a dispositional order of the circuit court for Milwaukee county, Judge William J. Haese, finding a juvenile, E.B., delinquent for committing burglary in violation of sec. 943.10(1)(a), Stats.[2]

On May 27, 1981, a petition alleging that E.B. was delinquent was filed in the Milwaukee County Circuit Court, Children's Division. The petition charged E.B. with two counts of burglary in violation of sec. 943.10 (1)(a), Stats. Prior to trial defense counsel moved to suppress certain inculpatory statements E.B. had given to the police on the ground that they were not voluntarily made. Defense counsel offered no evidence in support of the motion and informed the court that contrary to her advice E.B. refused to testify. However, defense counsel said that, if E.B. were to testify, he would say that the police officers promised to drop the burglary charges in exchange for his confession. The trial court denied the motion to suppress and defense counsel's request to argue the matter, stating:

"The court is appalled at the fact that to imagine for an instant that there's a case here under Miranda is a misreading of Miranda and abuse of a court function. The uncontroverted testimony from a witness which is certainly beyond dispute indicated that he read the Miranda rights to the juvenile. The young man was interrogated for a total of 15 minutes in the presence of three officers in plain clothes, was given the right to make and did in fact make a phone call which was abor-

---

[1] *In the Matter of E.B.*, 109 Wis. 2d 1, 325 N.W.2d 64 (Ct. App. 1982).

[2] Sec. 943.10(1)(a), Stats., provides:

"943.10 Burglary. (1) Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a Class C felony:
"(a) Any building or dwelling;"

tive, was given every conceivable right. To imagine this was procured in anything other than ideal circumstances to be not only approved but applauded by the court based upon the record made in this courtroom this morning. I would indicate if the court ruled in any other way the country would be committing suicide and I don't believe that we are obligated to commit suicide."

In a written request for jury instructions, defense counsel asked that several instructions, in addition to those eventually approved by the court, be given to the jury. The court denied this request. Defense counsel also requested that the instructions for burglary, burden of proof and presumption of innocence, and identification be submitted to the jury in written form. Following the testimony and arguments, the court read these instructions along with several others to the jury. The court, however, gave the jury a written copy of only the burglary instruction, stating:

"Now, I am going to send with you to the jury room, because I am obligated to by the Supreme Court of the State of Wisconsin, the written instruction, which I have read to you concerning the charge of burglary. The fact that I'm sending it to your jury room in writing doesn't make it any more important or less important than the other instructions, which I have given you. I'm also sending with you to the jury room the two written verdicts. You will have those three documents with you in the jury room."

Immediately after the jury retired for its deliberations, defense counsel again requested—this time orally —that the burden of proof and presumption of innocence instruction be given to the jury in written form. Defense counsel argued that the jury should have this instruction in writing because it represented the theory of defense in this case. The trial court denied the request.

On June 16, 1981, the jury found E.B. guilty of burglary as charged in count two of the petition. Pursuant

to the verdict, the trial court entered a dispositional order on June 22, 1981, finding E.B. delinquent. The order transferred legal custody of E.B. to the Wisconsin Department of Health and Social Services, Division of Corrections, placing him in the Ethan Allen School for Boys at Wales, Wisconsin, until his eighteenth birthday.

E.B. filed a notice of appeal on October 21, 1981. On appeal E.B. contended that the trial court erred in the following respects: refusing to give the jury a written copy of the jury instruction relating to burden of proof and presumption of innocence, denying E.B.'s motion to suppress and refusing argument thereon, failing to inquire further into defense counsel's allegations that E.B. was promised the charges would be dropped in exchange for his confession, and refusing to give Wis. JI—Criminal 180 on confessions and admissions against interest. The court of appeals vacated the circuit court's dispositional order and remanded the cause, finding that it was error under secs. 805.13(4) and 972.10(5), Stats., for the circuit court to refuse to provide the jury with a written copy of the burden of proof and presumption of innocence instruction. The other issues raised by E.B. were not addressed by the court of appeals. We granted the state's petition for review.

Secs. 805.13(4)[3] and 972.10(5),[4] Stats., both state in pertinent part: "The court shall provide the jury with

---

[3] Sec. 805.13(4), Stats., provides:

"(4) INSTRUCTION. The court shall instruct the jury before or after closing arguments of counsel. Failure to object to a material variance or omission between the instructions given and the instructions proposed does not constitute a waiver of error. The court shall provide the jury with one complete set of written instructions providing the substantive law to be applied to the case to be decided."

[4] Sec. 972.10(5), Stats., provides:

"(5) When the evidence is concluded and the testimony closed, if either party desires special instructions to be given to the jury,

one complete set of written instructions providing the substantive law to be applied to the case to be decided." The threshold question on this review is whether these statutes are unconstitutional exercises of legislative power under the separation of powers doctrine. It is a basic principle of law that statutes are presumed to be constitutional. Thus the party attacking a statute has the burden of proving its unconstitutionality beyond a reasonable doubt. *State v. Holmes,* 106 Wis. 2d 31, 41, 315 N.W.2d 703 (1982).

The Wisconsin Constitution establishes three branches of government: legislative, executive, and judicial. Although not expressly stated, the separation of powers doctrine is created by the following constitutional provisions:

"The legislative power shall be vested in a senate and assembly." Wis. Const. art. IV, sec. 1.

"The executive power shall be vested in a governor. . . ." Wis. Const. art. V, sec. 1.

"The judicial power of this state shall be vested in a unified court system consisting of one supreme court, a court of appeals, a circuit court, such trial courts of gen-

---

the instructions shall be reduced to writing, signed by the party or his or her attorney and filed with the clerk, unless the court otherwise directs. Counsel for the parties, or the defendant if he or she is without counsel, shall be allowed reasonable opportunity to examine the instructions requested and to present and argue to the court objections to the adoption or rejection of any instructions requested by counsel. The court shall advise the parties of the instructions to be given. Counsel, or the defendant if he or she is not represented by counsel, shall specify and state the particular ground on which the instruction is objected to, and it shall not be sufficient to object generally that the instruction does not state the law, or is against the law, but the objection shall specify with particularity how the instruction is insufficient or does not state the law or to what particular language there is an objection. All objections shall be on the record. The court shall provide the jury with one complete set of written instructions providing the substantive law to be applied to the case to be decided."

eral uniform statewide jurisdiction as the legislature may create by law, and a municipal court if authorized by the legislature. . . ." Wis. Const. art. VII, sec. 2.

"The supreme court shall have superintending and administrative authority over all courts." Wis. Const. art. VII, sec. 3(1).

"The chief justice of the supreme court shall be the administrative head of the judicial system and shall exercise this administrative authority pursuant to procedures adopted by the supreme court. The chief justice may assign any judge of a court of record to aid in the proper disposition of judicial business in any court of record except the supreme court." Wis. Const. art. VII, sec. 4(3).

In *State v. Holmes, supra,* we discussed the separation of powers doctrine at great length. We recognized that, while the three governmental branches are coordinate and separate, each deriving its own power from the constitution, the constitution does not define legislative, executive, or judicial power. Thus "it is neither possible nor practicable 'to classify accurately all the various governmental powers and to say that this power belongs exclusively to one department and that power belongs exclusively to another.' *Integration of Bar Case,* 244 Wis. 8, 45, 11 N.W.2d 604 (1943)." *Id.* at 42–43. Indeed, the separation of powers doctrine does not require a scientific, absolute division of power without overlap. Rather, the doctrine contemplates a government of three separate branches which share certain powers. *Id.* at 43.

We have consistently recognized that the legislature and the judiciary share the power to regulate practice and procedure in the judicial system. The supreme court has inherent constitutional power to regulate matters related to adjudication and adopt measures necessary for the due administration of justice. *Id.* at 44; *In re Charles E. Kading,* 70 Wis. 2d 508, 518, 235 N.W.2d 409, 238 N.W.2d 63, 239 N.W.2d 297 (1975). The legislature is

also empowered to enact laws to assure fair trial. *State v. Holmes,* 106 Wis. 2d at 46.

In *Rules of Court Case,* 204 Wis. 501, 236 N.W. 717 (1931), this court examined the constitutionality of sec. 251.18, Stats. 1929[5] (now sec. 751.12, Stats.), which

[5] Sec. 251.18, Stats. 1929, provided:

"**Rules for inferior courts.** The supreme court of the state of Wisconsin shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of Wisconsin, for the purpose of simplifying the same and of promoting the speedy determination of litigation upon its merits. Such rules shall not abridge, enlarge or modify the substantive rights of any litigant. Such rules shall not become effective until sixty days after their adoption by said court. All such rules shall be printed by the state printer and paid for out of the state treasury, and the court shall direct the same to be distributed as it may deem proper. All statutes relating to pleading, practice and procedure shall have force and effect only as rules of court and shall remain in effect unless and until modified or suspended by rules promulgated pursuant hereto. No rule modifying or suspending such statutory rules shall be adopted until the court has held a public hearing with reference thereto, notice of which shall be given by publication for four successive weeks in the official state paper, the expense of such publication to be paid out of the state treasury. Nothing in this section shall abridge the right of the legislature to enact, modify or repeal statutes or rules relating to pleading, practice or procedure. The attorney-general of Wisconsin, the revisor of statutes, the chairmen of the judiciary committees of the senate and of the assembly, a member of the board of circuit judges, and a member of the board of county judges, selected by those boards annually, the president of the Wisconsin state bar association and three members of the said bar association, elected by said association annually, shall constitute an advisory committee whose duty it shall be to observe and to study the administration of justice in the courts of Wisconsin and to advise the supreme court from time to time as to changes in rules of pleading, practice and procedure which will, in its judgment, simplify procedure and promote the speedy determination of litigation upon its merits. The members of said committee shall receive no compensation, but shall be reimbursed out of the state treasury for expenses necessarily and actually incurred by them in attending meetings of said committee outside the county of their residence."

created rulemaking authority for the Wisconsin supreme court in the area of practice and procedure. The statute also reserved to the legislature the authority to enact, modify, or repeal statutes or rules in this area. After discussing several authorities, the court stated:

"From the foregoing it is concluded that the power to regulate procedure, at the time of the adoption of the constitution, was considered to be essentially a judicial power, or at least not a strictly legislative power, and that there is no constitutional objection to the delegation of it to the courts by the legislature." *Id.* at 510.

The court further reasoned that, since the legislature could delegate power, it could also take it back. Therefore, the legislature did not offend the separation of powers doctrine by delegating and, at the same time, retaining the authority to regulate practice and procedure. Accordingly, the court held the statute constitutional. In a subsequent case this court stated that, at least when there is no conflicting legislation, it "has equal power with the legislature to improve practice and procedure, and should not hesitate to do so in the interest of justice and law enforcement." *Spoo v. State,* 219 Wis. 285, 290, 262 N.W. 696 (1935) [*overruled on other grounds, State v. Lampe,* 26 Wis. 2d 646, 648, 133 N.W.2d 349 (1965)].

More recently in *State v. Holmes, supra,* this court examined the constitutionality of sec. 971.20, Stats., which creates a peremptory right to substitution of a judge. Sec. 971.20 was challenged on the ground that it was an unconstitutional legislative interference with the functioning of the judicial branch. In reaching the conclusion that the statute did not violate the constitutional doctrine of separation of powers, we stated:

"Regulation of substitution of judges falls within the above described vast stretches of ambiguous territory in which the functions of two branches, namely the judicial and legislative, overlap. Both the judiciary and the legislature are empowered to ensure not only that the fairness

and integrity of the courts be maintained but also that the operation of the courts be conducted in such a manner as will avoid even the suspicion of unfairness." 106 Wis. 2d at 43–44.

We went on to conclude:

"The legislature, in obedience to its duty to promote the public interest, may enact laws to assure fair trial. *Cf. In re Cannon*, 206 Wis. 374, 381, 240 N.W. 441 (1932). The legislature may enact statutes which provide the means for assuring litigants their constitutional right to have their cases heard by an unbiased judge, and the legislature may, to effectuate the public policy of maintaining a fair judicial system and public confidence in that system, grant litigants broader rights to challenge a judge than are granted under the constitution so that litigants are assured both the actuality and appearance of a fair trial." *Id.* at 46.

We believe that regulations as to the form and manner of giving jury instructions fall within the zone of shared legislative and judicial power to regulate practice and procedure in the courts. Thus the legislature had the authority to enact secs. 805.13 (4) and 972.10 (5), Stats.

The separation of powers doctrine, however, places significant limitations on the legislature's exercise of authority within zones of shared power. *State v. Holmes*, 106 Wis. 2d at 68. We have long held that the separation of powers doctrine prohibits the legislature from "unduly burdening or substantially interfering with the judicial branch." *Id.* at 68. In *John F. Jelke Co. v. Beck*, 208 Wis. 650, 660, 242 N.W. 576 (1932), we stated:

"In Wisconsin the jurisdiction and power of the courts is conferred not by act of the legislature but by the constitution itself. While the legislature may regulate in the public interest the exercise of the judicial power, it cannot, under the guise of regulation, withdraw that

power or so limit and circumscribe it as to defeat the constitutional purpose."

We have further stated that "[w]hen 'the exercise of administrative and legislative power ha[s] so far invaded the judicial field as to embarrass the court and impair its proper functioning,' the court will be 'compelled to maintain its integrity as a constitutional institution.' " *State v. Holmes,* 106 Wis. 2d at 69, quoting *Integration of Bar Case,* 244 Wis. 8, 49, 11 N.W.2d 604, 12 N.W.2d 699, (1943). Thus the question in the instant case is whether the operation of secs. 805.13(4) and 972.10(5), Stats., "materially impairs or practically defeats . . . the proper functioning of the judicial system so as to constitute a violation of the doctrine of separation of powers." *State v. Holmes,* 106 Wis. 2d at 69.

The court of appeals held that secs. 805.13(4) and 972.10(5), Stats., are mandatory and not directory. We agree. Both statutes state that "[t]he court *shall* provide the jury with one complete set of written instructions providing the substantive law to be applied to the case to be decided." (Emphasis added.) The general rule is that, when the word shall is used in a statute, it is presumed mandatory unless a different construction is necessary to carry out the clear intent of the legislature. *Wauwatosa v. Milwaukee County,* 22 Wis. 2d 184, 191, 125 N.W.2d 386 (1963); *Scanlon v. Menasha,* 16 Wis. 2d 437, 443, 114 N.W.2d 791 (1962). There is little doubt that the legislature intended secs. 805.13(4) and 972.10 (5), Stats., to be mandatory. "When the words 'shall' or 'may' are used in the same section of a statute, one can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *Karow v. Milwaukee County Civil Service Comm.,* 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978). The words "shall" and "may" each appear several times in

secs. 805.13 and 972.10. Thus the requirement that the court *shall* provide certain instructions in written form is mandatory.

The court of appeals further held that, since secs. 805.13(4) and 972.10(5), Stats., are mandatory, their violation requires automatic reversal. If the legislature intended to mandate automatic reversal for a violation of sec. 805.13(4) or 972.10(5), this amounts to an unconstitutional exercise of legislative authority under the doctrine of separation of powers. In *Integration of Bar Case,* we stated:

> "*While the legislature has no constitutional power to compel the court to act or, if it acts, to act in a particular way in the discharge of the judicial function,* it may nevertheless with propriety, and in the exercise of its power and the discharge of its duty, declare itself upon questions relating to the general welfare . . . . The court, as has been exemplified during the entire history of the state, will respect such declarations and, as already indicated, adopt them so far as they do not embarrass the court or impair its constitutional functions." 244 Wis. at 52 (Emphasis added.)

It is a function of the judiciary to determine on a case-by-case basis whether error is reversible. Under the court of appeals' reading of secs. 805.13(4) and 972.10(5), the appellate court is required to reverse a judgment whenever these statutes are violated. Legislation which mandates automatic reversal of trial court judgments upon its violation impermissibly limits and circumscribes judicial power.

*Davis v. The President and Trustees of the Village of Menasha,* 21 Wis. 497 [*491] (1867), involved the constitutionality of a law which provided that all judgments rendered in cases where the presiding judge either died or left the state before expiration of the time for settling a bill of exceptions would be reversed and a new trial granted upon the application of either party. This court

held that the law was an unconstitutional interference with judicial power, stating:

"under a constitution which vests the executive, legislative and judicial powers in different departments, it is not competent for the law-making power to pass an act granting a new trial in a case between individuals; since to do so is to exercise judicial power in the strictest constitutional sense." *Id.* at 501 [\*495].

Similarly, in *Thoe v. Chicago, Milwaukee & St. Paul Railway Co.*, 181 Wis. 456, 195 N.W. 407 (1923), this court declared unconstitutional a statute which forbade any trial court from granting a directed verdict before the case was submitted to the jury. Finding that the legislature did not have the power to determine that the evidence is sufficient to go to the jury in every case, the court held:

"Whether it is or not is for the court to determine in the exercise of the powers conferred upon it by the constitution. A motion to direct a verdict calls for the exercise of legal judgment by applying the law to the facts of each case. It cannot be done wholesale by legislative fiat." *Id.* at 465.

We conclude that, although the legislature may require instructions be submitted to the jury in written form, the doctrine of separation of powers prohibits the legislature from mandating automatic reversal when a trial court fails to do so. If secs. 805.13(4) and 972.10(5), Stats., mandate reversal for noncompliance, we would be forced to strike them down as unconstitutional.

Statutes are, however, presumed to be constitutional and will not be declared unconstitutional without proof beyond a reasonable doubt. *County of Portage v. Steinpreis*, 104 Wis. 2d 466, 478, 312 N.W.2d 731 (1981).

Since neither sec. 805.13(4) nor sec. 972.10(5), Stats., expressly requires reversal upon noncompliance, we are not convinced beyond a reasonable doubt that they are unconstitutional. Thus the statutes must be upheld. Accordingly, we interpret secs. 805.13(4) and 972.10(5) as requiring the submission of instructions on substantive law to the jury in written form but, at the same time, leaving the determination of whether an error is reversible to the courts.[6]

Having determined that secs. 805.13(4) and 972.10(5), Stats., are constitutional, we must next consider whether the trial court erred in failing to provide the jury with a written copy of the burden of proof and presumption of innocence instruction. The statutes require that the jury receive written copies of only those instructions providing the *"substantive* law" to be applied in the case.[7] Thus error occurred only if the concepts of burden of proof and presumption of innocence fall within the realm of substantive law.

The substance-procedure distinction is an elusive notion often avoided by courts and legislatures because of the difficulty of its application. The words "substance" and "procedure" are in and of themselves somewhat ambiguous in the legal context. Furthermore, even once these words are defined, many legal concepts cannot

---

[6] We note that a harmless error analysis is appropriate in this context. The failure to submit a written copy of a jury instruction on substantive law is only a statutory violation. Therefore, the test for nonconstitutional jury instruction error should be applied. In *Werner v. State*, 66 Wis. 2d 736, 750, 226 N.W.2d 402 (1975), we held that an instructional error is harmless if it cannot reasonably be said that, had the error not been committed, the verdict might probably have been different.

[7] It should be noted that, while secs. 805.13(4) and 972.10(5), Stats., require the court to give the jury written copies of instructions on substantive law, these statutes do not preclude the submission of other instructions in writing. The court, at its discretion, may give the jury any instruction in written form.

easily be categorized as strictly substance or procedure. Nevertheless, the substance-procedure dichotomy, albeit subtle, does exist.

A noted treatise defines substantive criminal law as "that law which, for the purpose of preventing harm to society, (a) declares what conduct is criminal, and (b) prescribes the punishment to be imposed for such conduct. It includes the definition of specific offenses and general principles of liability." W. LaFave and A. Scott, *Criminal Law,* sec. 2, 5 (Hornbook Series 1972). The same treatise defines criminal procedure as that which "is concerned with the legal steps through which a criminal proceeding passes, commencing with the initial investigation of a crime and concluding with the unconditional release of the offender." *Id.* sec. 4, 14. In accordance with these definitions, several courts have held that "[a]s related to criminal law and procedure, *substantive law* is that which declares what acts are crimes and prescribes the punishment therefor; whereas, procedural law is that which provides or regulates the steps by which one who violates a criminal statute is punished." *State v. Augustine,* 197 Kan. 207, 209, 416 P.2d 281, 283 (1966); *State v. Garcia,* 229 So. 2d 236, 238 (Fla. 1969); *Roberts v. Love,* 231 Ark. 886, 892–93, 333 S.W.2d 897, 901 (1960). We adopt this formulation of the substance-procedure dichotomy for purposes of interpreting secs. 805.13(4) and 972.10(5), Stats. Under this dichotomy, the concepts of burden of proof and presumption of innocence clearly fall within the realm of procedure. Therefore, the circuit court did not err under secs. 805.13(4) and 972.10(5) in failing to submit a written copy of the burden of proof and presumption of innocence instruction to the jury.

E.B. also contends that the trial court erred in denying the motion to suppress his inculpatory statements

and refusing to allow argument thereon. The state bears the burden of proving that E.B.'s statements were voluntary beyond a reasonable doubt. *State v. Verhasselt,* 83 Wis. 2d 647, 653, 266 N.W.2d 342 (1978). "On review, however, this court will not upset the trial court's finding with respect to voluntariness unless the finding is contrary to the great weight and clear preponderance of the evidence." *Id.* at 653; *State v. Wedgeworth,* 100 Wis. 2d 514, 523, 302 N.W.2d 810 (1981).

At the suppression hearing, E.B. refused to testify, and defense counsel presented no evidence in support of the motion. The police officer's testimony, which was offered by the state, was the only evidence presented. Based on the officer's uncontroverted testimony, the trial court determined that the inculpatory statements were voluntarily made. The officer's testimony was not incredible as a matter of law. Therefore, the circuit court's finding was not against the great weight and clear preponderance of the evidence and must be upheld.

Furthermore, the circuit court did not abuse its discretion in refusing argument on the motion to suppress. In *State ex rel. Funmaker v. Klamm,* 106 Wis. 2d 624, 317 N.W.2d 458 (1982), we held that a defendant does not have a constitutional right to present a closing argument at a preliminary examination. The same reasoning applies to the instant case. We hold that, while closing argument may be desirable in a suppression hearing, it is not constitutionally required. Rather, the decision to allow closing argument is a matter within the discretion of the circuit judge.

In *Funmaker* we held that the trial court's "denial of closing argument was a reasonable exercise of discretion" because only two witnesses testified, the facts were uncomplicated, and the record indicated the trial court

was familiar with the variances in the evidence. *Id.* at 634. In the instant case, the same conditions existed except that only one witness testified at the suppression hearing. We conclude, therefore, that the trial court reasonably exercised his discretion in refusing to allow closing argument.

E.B. also contends that the circuit court erred in the following respects: by failing to inquire further into defense counsel's allegations that the police promised E.B. the burglary charges would be dropped in exchange for his confession, and by refusing to give Wis. JI—Criminal 180 on confessions and admissions against interest. These contentions are without merit.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(concurring.)* I concur in the result but write separately to emphasize that one should not take the categories "substance" (equated in the majority opinion with "substantive law") and "procedure" too seriously in applying secs. 805.13(4) and 972.10(5). The substance-procedure dichotomy is a legal term of art arising in a variety of contexts, as, for example, in deciding *Erie*-type questions, in deciding conflict of laws questions, and in determining whether a law should be applied retroactively. Cover and Fiss, *The Structure of Procedure,* pp. 47–75, 95 (1979). The statutes in issue here create another context in which the distinction is used.

As the majority recognizes, the distinction between substance and procedure is elusive. There are large, shadowy areas in which reasonable people often cannot agree whether something should be called substantive or procedural. The issue in the case at bar provides a good example of this problem. Here, the reasonable-doubt-burden-of-proof-is-on-the-state-presumption-of-in-

nocence instruction[1] does not fit neatly into the definitions of substantive law and procedural law which the majority adopts at pages 188 and 189. Indeed, Professors

---

[1] The instructions which were delivered orally and which the defendant requested be given in writing are as follows:

"Now, in determining the guilt or innocence of the juvenile or of anyone else, you should scrutinize the evidence with the utmost care and caution and you should act with all the judgment, reason, prudence and discrimination that you as a person possess. If after all this scrutiny, you have a reasonable doubt in your own mind of the juvenile's guilt, you must find him not guilty.

"The law presumes every person charged with the commission of an offense to be innocent. The law presumes that this juvenile is innocent. This presumption attends the juvenile throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The juvenile is not required to prove his innocence. The burden of proving the juvenile guilty of every element of the crime charged is upon the State, and before you can find guilt, the State must prove to your satisfaction that that juvenile is in fact guilty beyond a reasonable doubt. If you can reconcile the evidence upon any reasonable hypothesis consistent with the juvenile's innocence, you should do so and find him not guilty.

"Now, the term 'reasonable doubt' means a doubt based on reason and common sense. It is a doubt for which a reason can be given arising form a fair and rational consideration of the evidence or the lack of evidence. It means such a doubt as would cause a man of ordinary prudence to hesitate when called upon to act in a very important affair of life.

"A reasonable doubt, however, is not a doubt which is merely fanciful or speculative, such as a skeptical mind might invent or suggest. It is not a doubt, which ignores a reasonable interpretation of the evidence of which arises merely from sympathy or from fear to return a verdict of guilt. A doubt, which arises from sympathy or fear to return a verdict of guilt, is not a reasonable doubt. A reasonable doubt is not merely a doubt, such as may be conjured up in the mind of one desiring to escape the responsibility of a decision.

"While it is your duty to give the juvenile the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth, and to give the juvenile a benefit of a reasonable doubt if it arises in your minds after you have carefully considered all the evidence that was adduced in this case."

LaFave and Scott, upon whose definitions the majority relies, explain that the burdens of production and persuasion "are procedural in nature, but . . . have a large substantive dimension." LaFave and Scott, *Criminal Law*, sec. 8, p. 44 (1972).

Before we can label the matter before us, we should consider the values or policies served by characterizing the matter as substantive or procedural. In directing the judge to furnish the jury with written instructions providing the substantive law, the legislature obviously was trying to give the jury tools for better determining guilt or innocence. Thus instructions which a reasonable person views as "essential" to the determination of guilt or innocence (as contrasted with "housekeeping instructions," *e.g.*, objections of counsel, not talking to witnesses) should be considered "substantive" and furnished in writing to the jury.

The reasonable-doubt-burden-of-proof-is-on-the-state-presumption-of-innocence instruction fulfills this function: It encompasses a critical principle lying at the foundation of the administration of our criminal law and "is a prime instrument for reducing the risk of convictions resting on factual error."[2] I therefore conclude the circuit court erred in not giving the jury this instruction in writing.

As the majority intimates, circuit courts should avoid needless appellate disputes about what instructions do or do not provide substantive law by using their discretion to furnish to the jury in writing more, rather than fewer, instructions.

I am authorized to state that JUSTICE NATHAN S. HEFFERNAN joins this concurring opinion.

---

[2] *In re Winship*, 397 U.S. 358, 363 (1970).