# MIDWEST STEEL COMPANY, Petitioner-Respondent,

## v.

# Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent-Appellant.†

### Court of Appeals

*No. 91-1527. Submitted on briefs December 16, 1991.—Decided February 4, 1992.*

(Also reported in 482 N.W.2d 377.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Lorraine C. Stoltzfus,* assistant attorney general of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the briefs of *William Smoler* and *Alan E. Korpady* of *Murphy & Desmond, S.C.,* of Madison.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Wisconsin Department of Natural Resources appeals a circuit court order reversing the DNR's decision to deny confidential status to information contained in a report submitted to the DNR by Midwest Steel Company concerning hazardous waste generated and stored by Midwest at its Madison location. The DNR argues that the court erred by interpreting secs. 144.433(2)(b) and 144.70(2)(b), Stats., to require the DNR to grant confidentiality to reports upon certification by the company. The certification required by the statute is that the data involved relates to processes or production unique to the company or would tend to adversely affect the competitive position of the owner or operator if made public. Because we conclude that the statutes require the grant of confidentiality upon certification, we affirm the order.

Midwest is a recycler whose business is largely focused on recycling automobiles and appliances. Midwest uses a shredding process to retrieve the component value from the cars and appliances. The shredding operation breaks materials up and separates them into four

components; recyclable ferrous metal; recyclable nonferrous metal; fluff, which consists of the residual material from shredded dashboards, seat cushions, fabrics, etc.; and washtank mud, which is the residual material from separating the nonferrous metal from the fluff. While most shredders use a "dry" process to remove nonferrous components, Midwest uses a "wet" process. Midwest asserts that it has spent considerable time and money in researching and developing this process.

After a DNR investigation of Midwest in 1988, the DNR requested that Midwest test certain materials and soil at the site and submit the report to the DNR. Midwest submitted the report and simultaneously applied to the DNR for confidential status of the report. Midwest certified to the DNR that its "wet" shredding process is unique and that disclosure of the information would give competitors clues to developing this unique process. It also certified that this information, if publicly disclosed, would adversely affect its competitive position.

The DNR denied Midwest's application for confidential status on the ground that Midwest had failed to prove by a preponderance of the credible evidence that the report was or would disclose a trade secret or other proprietary information. Midwest filed a petition for judicial review. The trial court found that under secs. 144.433(2)(b) and 144.70(2)(b), Stats., once Midwest certified that disclosure of this information would adversely affect competition, the DNR had no authority to deny Midwest's application for confidentiality. Consequently, the trial court reversed the DNR's denial of confidential status to the report.

The DNR argues that secs. 144.433(2)(b) and 144.70(2)(b), Stats., give it the power to review certifications, and, if a company cannot prove the validity of its certification by a preponderance of the credible evidence,

the DNR may deny confidential status to the information. Midwest argues, however, that review by the DNR is foreclosed by the unambiguous statutory language.

The resolution of this question involves statutory interpretation. Statutory interpretation presents a question of law. *State v. Michels,* 141 Wis. 2d 81, 87, 414 N.W.2d 311, 313 (Ct. App. 1987). A court is not bound by an agency's conclusion of law. *Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82, 452 N.W.2d 368, 371 (1990). Although in some instances it is appropriate for the reviewing court to give deference to an agency's interpretation of a statute, *id.,* no weight is given to the agency's interpretation where the statute is unambiguous. *DILHR v. LIRC,* 155 Wis. 2d 256, 263, 456 N.W.2d 162, 164 (Ct. App. 1990); *Hawes v. Germantown Mut. Ins. Co.,* 103 Wis. 2d 524, 535–36, 309 N.W.2d 356, 362 (Ct. App. 1981).

The DNR argues that we should give its interpretation great weight because of its long-standing interpretation of the statutory provisions governing the grant of confidentiality evidenced by Wis. Adm. Code sec. NR 2.19, which places the burden of establishing the need for confidentiality on the person requesting it. The fact that the DNR may have a long-standing interpretation of the statute does not abrogate the rule that, absent an ambiguity, we accord no deference to the agency's interpretation. Because we conclude that secs. 144.433(2)(b) and 144.70(2)(b), Stats., are unambiguous, the agency's interpretation is not entitled to any weight. No deference is given to an agency's interpretation of an unambiguous statute because we are as capable of reading the unambiguous statutory language as is the agency.

164

Sections 144.433(2)(b) and 144.70(2)(b), Stats., contain the same language. Both provide:

> Except as provided under par. (c) [emissions data], the department *shall* grant confidential status for any records or information received by the department and certified by the owner or operator of the solid waste facility as relating to production or sales figures or to processes or production unique to the owner or operator of the solid waste facility or which would tend to adversely affect the competitive position of the owner or operator if made public. (Emphasis added.)

Both statutes on their face mandate that the DNR grant confidentiality to information that a company certifies relates to production, sales figures or processes, or whose disclosure would affect the competitive position of the owner or operator if made public.

The DNR argues, however, that the use of the word "shall" in the statutes is not mandatory, but rather grants the DNR discretion to deny an application if it determines the certification is not true. The DNR recognizes that the general rule provides that when the word "shall" is used in a statute, it is presumed mandatory. *In re E.B.*, 111 Wis. 2d 175, 185–86, 330 N.W.2d 584, 590 (1983). However, it asks us to apply the exception that provides that the word "shall" can be interpreted as merely directory if it is necessary to carry out the clear intent of the legislature. *Id.*

The DNR submits that the clear intent of the legislature in enacting ch. 144, Stats., was to provide for a waste management program that would protect the public health and environment. It contends that this policy is thwarted by Midwest's interpretation of the statute because this interpretation will encourage businesses to

165

falsify certifications in order to protect their environmentally damaging practices from public scrutiny. Thus, the DNR argues that to carry out the clear intent of the legislature we must conclude that "shall" as used in this statute is directory rather than mandatory. We reject this assertion.

We conclude that the DNR's lack of authority to withhold a grant of confidentiality once a company complies with secs. 144.433(2)(b) and 144.70(2)(b), Stats., does not detrimentally affect the DNR's ability to carry out an effective waste management program in the state. We reach this conclusion for a variety of reasons.

First we note that the grant of confidentiality in no way restricts the DNR's access to or ability to act upon the information that is submitted to it. The DNR, thus, has the unrestricted ability to analyze all of the information submitted to it in order to diagnose and prescribe effective treatments for environmental ills.

Moreover, the unconditional grant of confidentiality upon certification helps to ensure that businesses will divulge all the information necessary to the DNR to carry out its waste management programs. Businesses may be reluctant to provide full disclosure if they fear the DNR may deny confidentiality to their reports and open their business secrets to the public and their competitors. An unconditional grant of confidentiality for the information that an owner must certify to be in the report allays these fears and encourages full disclosure.

In addition, the grant of confidentiality is not unlimited in scope. Confidentiality is only granted to information certified by the owner to be related to production processes or sales figures or that if disclosed it would adversely affect competition. Certain information is explicitly excluded from a grant of confidentiality.

166

Public access to emissions data, for instance, cannot be restricted. Section 144.433(2)(c) and 144.70(2)(c), Stats.

Because the grant of confidentiality does not affect the DNR's ability to evaluate and treat environmental problems, because the grant of confidentiality helps to ensure full disclosure by companies on environmental matters and because the grant of confidentiality is limited in its scope to protect business secrets from public exposure, we conclude that a mandatory grant of confidentiality does not subvert the legislative purpose of carrying out an effective waste management program in Wisconsin. Consequently, we conclude that by use of the word "shall," the legislature mandated that the DNR grant confidentiality when a company complies with secs. 144.433(2)(b) and 144.70(2)(b), Stats.

█

The DNR also argues that granting confidentiality to information upon mere certification by a company that such information if disclosed publicly would adversely affect competition contravenes the public policy the state has recognized in public access to information. While this may be true, we must presume that by enacting secs. 144.433(2)(b) and 144.70(2)(b), Stats., the legislature chose between two competing public policies. The legislature has determined that the state's interest in ensuring full disclosure by businesses on operations affecting the environment by the grant of confidentiality outweighed the public's interest in access to information. Such determinations are uniquely within the province of the legislature. It is neither our duty, nor the DNR's, to interpret a statute in such a manner that substitutes the legislature's conclusion in this regard with our own.

*By the Court.*—Order affirmed.