COURT OF APPEALS
DECISION
DATED AND FILED

December 2, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP790**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV1314

IN COURT OF APPEALS
DISTRICT II

---

JOSH KAUL, WISCONSIN DEPARTMENT OF JUSTICE, TONY EVERS AND
KATHY KOLTIN BLUMENFELD,

  PLAINTIFFS-RESPONDENTS,

 V.

WISCONSIN STATE LEGISLATURE, WISCONSIN STATE LEGISLATURE
JOINT COMMITTEE ON FINANCE, CHRIS KAPENGA, DEVIN LEMAHIEU,
ROBIN VOS, TYLER AUGUST, HOWARD L. MARKLEIN, MARK BORN,
DUEY STROEBEL AND TERRY KATSMA,

  DEFENDANTS-APPELLANTS.

---

APPEAL from orders of the circuit court for Dane County:
SUSAN M. CRAWFORD, Judge. *Reversed and cause remanded with directions.*

Before Neubauer, Grogan and Lazar, JJ.

¶1 LAZAR, J. The Wisconsin State Legislature,[1] the State Legislature Joint Committee on Finance, and various State legislators,[2] appeal the circuit court's summary judgment orders in favor of respondents Attorney General Josh Kaul, Wisconsin Department of Justice (DOJ), Governor Tony Evers, and Secretary of the Department of Administration (DOA) Kathy Koltin Blumenfeld[3] holding that WIS. STAT. § 165.08(1) (2021-22)[4] (as amended by 2017 Wis. Act 369, § 26) is unconstitutional as applied to certain categories of cases and violates the separation of powers doctrine under the Wisconsin Constitution.[5]

¶2 The Legislature asserts that the circuit court erred and the DOJ's challenge fails because WIS. STAT. § 165.08(1) has at least some constitutional applications within the two categories of cases identified by the DOJ, so the DOJ failed to meet its heavy burden on its "hybrid" constitutional challenge. The

---

[1] The appellants shall collectively be referred to as "the Legislature." When referring to the legislative body generally and not in its capacity as party to this action, the term "legislature" shall not be capitalized.

[2] State Senate President Chris Kapenga, Senate Majority Leader Devin LeMahieu, Assembly Speaker Robin Vos, Assembly Majority Leader Jim Steineke, Co-Chairs of the Joint Committee on Finance Senator Howard L. Marklein and Representative Mark Born, and Vice Chair of the Joint Committee on Finance Senator Duey Stroebel and Representative Amy Loudenbeck. All these officials were named in their official capacity as office holders; some no longer hold these positions.

[3] All officials have been named in their official capacity as office holders. The respondents shall collectively be referred to as the Department of Justice (DOJ).

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[5] The circuit court entered two separate orders for the two categories of cases identified by the DOJ. The first applied to civil enforcement actions brought under the statutes that the attorney general is charged with enforcing, such as environmental or consumer protection laws (as identified in the first count of the complaint). The second applied to civil actions the DOJ prosecutes on behalf of executive-branch agencies relating to the administration of the statutory programs they execute, such as common law tort and breach of contract actions.

Legislature further contends that the circuit court erred when it relied upon a dissent, and not the majority, in *Service Employees International Union, Local 1 v. Vos*, (*SEIU*), 2020 WI 67, 393 Wis. 2d 38, 946 N.W.2d 35, in analyzing the DOJ's alternate argument that the statute unduly burdens or substantially interferes with the executive branch's constitutional role. We agree that the court erred in both respects and reverse.

## BACKGROUND

¶3 In December 2018, the legislature enacted 2017 Wis. Act 369 (the "Act"). This Act was one of several drafted by the legislature after the fall 2018 elections and signed by the then-governor before a newly-elected attorney general and governor were sworn into office. *See SEIU*, 393 Wis. 2d 38, ¶3. Section 26 of the Act amended WIS. STAT. § 165.08.[6] Previously, that statute provided:

> Any civil action prosecuted by the [DOJ] by direction of any officer, department, board or commission, shall be compromised or discontinued when so directed by such officer, department, board or commission. [Civil actions prosecuted] on the initiative of the attorney general, or at the request of any individual may be compromised or discontinued with the approval of the governor.

Sec. 165.08 (2015-16).

---

[6] Section 26 also renumbered WIS. STAT. § 165.08 to § 165.08(1). 2017 Wis. Act 369, § 26.

¶4      The newly enacted WIS. STAT. § 165.08(1) altered the process of compromise and discontinuance of certain DOJ civil actions.[7]    Now, the legislature's Joint Committee on Finance[8] must provide oversight and approval before the attorney general may settle such cases:

> Any civil action prosecuted by the [DOJ] ... may be compromised or discontinued ... by submission of a proposed plan to the joint committee on finance for the approval of the committee.    The compromise or discontinuance may occur only if the joint committee on finance approves the proposed plan.

Sec. 165.08(1).

¶5      Almost immediately, some labor organizations and individual taxpayers filed a complaint that facially challenged the constitutionality of several laws, including the newly enacted WIS. STAT. § 165.08(1), asserting that the statute's "provisions violate[d] the separation of powers" and "either overly burden[ed] the executive branch or took executive power and gave it to the legislature." *SEIU*, 393 Wis. 2d 38, ¶3.    Our state supreme court upheld the statute over this facial challenge, holding that:

> In at least some cases, the legislature may permissibly give itself the power to consent to an agreement where the action involves injunctive relief or a proposed consent decree (WIS. STAT. § 165.25(6)(a)1.), or in the compromise or discontinuance of a matter being prosecuted (WIS. STAT.

---

[7]  Colloquially, the Legislature asserts this was done so that it could have a "seat at the table" in certain settlements of plaintiff-side civil actions.  The DOJ asserts that "the Legislature took full veto power" and now sits on a "throne."  "It is not our role to determine the wisdom or rationale underpinning a particular legislative pronouncement." *Aicher ex rel. LaBarge v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶57, 237 Wis. 2d 99, 613 N.W.2d 849.  We determine the constitutionality of statutes.

[8]  The Wisconsin Joint Committee on Finance (hereinafter Joint Finance Committee) is a standing committee of the legislature. *See* WIS. STAT. § 13.09.

§ 165.08). In at least some cases, we see no constitutional violation in allowing the legislature to intervene in litigation concerning the validity of a statute, at least where its institutional interests are implicated. *See* WIS. STAT. § 13.365; WIS. STAT. § 803.09(2m). As we have explained, because the Plaintiffs have not met their burden to prove these provisions may not be constitutionally applied under any circumstances, the motion to dismiss the Plaintiffs' facial challenge should have been granted.

*SEIU*, 393 Wis. 2d 38, ¶72 (footnote omitted).

¶6      As our supreme court explained further, the statute did not violate the separation of powers doctrine:

[T]he attorney general's litigation authority is not, in at least some cases, an exclusive executive power. These types of cases fall under a shared powers analysis. Where the legislature has appropriate institutional interests, legislative exercise of this shared power in at least some cases does not unduly burden or substantially interfere with the attorney general's executive authority. Hence, the facial challenge gets nowhere under an "unduly burdensome" shared powers analysis.

*Id.*, ¶72 n.22. The dissent in *SEIU*, however, disagreed with "the majority['s] mechanical[] appli[cation] [of] a strict review standard for facial challenges and conclude[d] that the [p]laintiffs[]" had sufficiently pled that the statute "unduly burden[s] or substantially interfere[s] with the executive branch's power to execute the law" such that the motion to dismiss should not have been granted. *Id.*, ¶¶172, 187 (Dallet, J., concurring in part, dissenting in part).

¶7      Upon remand, and upon stipulation of the parties, the circuit court in *SEIU* entered a final judgment on January 5, 2021, concluding that section 26 of the Act is "not facially unconstitutional" and dismissing the plaintiffs' complaint "without prejudice and without costs."

¶8 Following that order, the legislature created a settlement approval process with a checklist to assist in identifying civil actions in which expedited action by the Joint Finance Committee was warranted. *See* WIS. STAT. § 13.10. The checklist specifically inquired whether appropriation of settlement funds was at issue and whether a matter was time sensitive. The DOJ declined to use this checklist process, and the Joint Finance Committee has approved proposed settlements only under circumstances where the DOJ publicly provides its exact terms, among others. The Legislature contends the DOJ has made the approval process difficult. And, as is obvious by the complaint underlying this appeal, the DOJ chafed at being required to seek pre-approval of certain civil action settlements.

¶9 This state of unrest and dissatisfaction continued for about five months until June 8, 2021, when the DOJ filed its complaint alleging that section 26 of the Act violates the constitutional separation of powers with respect to two categories of civil actions:

> (1) civil enforcement actions brought under statutes that the Attorney General is charged with enforcing, such as environmental or consumer protection laws; and (2) civil actions the [DOJ] prosecutes on behalf of executive-branch agencies relating to the administration of the statutory programs they execute, such as common law tort and breach of contract actions.

¶10 Following cross-motions for summary judgment, the circuit court issued a decision on May 5, 2022, holding that the DOJ had raised a hybrid challenge to the statute—"a broad challenge to a specific category of applications." *See SEIU*, 393 Wis. 2d 38, ¶45. Citing *SEIU*, the court stated that the DOJ was required to meet the standard of proof for a facial challenge; it "must show that 'as to the specific category of applications, the statute could not be

constitutionally enforced under any circumstances.'" Then, concluding that no institutional interests of the Legislature were implicated, the court "declare[d] WIS. STAT. § 165.08(1) unconstitutional and in violation of the separation of powers under the Wisconsin Constitution" as to the first category of cases, "consisting of civil enforcement actions," and enjoined § 165.08(1) as to that category. The court declined to grant summary judgment in favor of the DOJ on the second category of cases.

¶11 In response to the concerns raised at oral argument and in the circuit court's first order,[9] the DOJ amended its complaint by adding a single paragraph making clear that the second category of cases "does not involve any settlement in a plaintiff-side civil action that would require the payment of money to the defendant via a counterclaim or some other avenue." Both parties renewed their motions for summary judgment.

¶12 Without an additional hearing, on June 24, 2022, the circuit court issued another decision, this time declaring WIS. STAT. § 165.08(1) unconstitutional as to the second category of cases, "namely: 'civil actions the Department prosecutes on behalf of executive-branch agencies relating to the administration of the statutory programs they execute,' where such settlements do not concede the unconstitutionality of any state statute and do not require any payments by the state party to a defendant." The court held that "[b]y granting itself exclusive control over the settlement or discontinuation of such

---

[9] The DOJ contended that the second category of cases only included plaintiff-side civil actions and excluded cases where the State could be required to pay money to another party. The Legislature noted this was not in the complaint and objected to an oral amendment. The DOJ was granted leave to amend its complaint.

executive-branch lawsuits, the Legislature impermissibly interferes with the executive's faithful execution of the laws. Doing so is a violation of the principle of separation of powers established in the Wisconsin Constitution." The court also found that "[t]o the extent that the Supreme Court in *SEIU* found [the Legislature's] institutional interests may warrant legislative involvement in certain settlement decisions, those interests are not present here." These orders were stayed pending the Legislature's appeal.[10]

¶13 On August 19, 2024, the DOJ filed a Combined Motion Seeking Lift of Stays Pending Appeal and Opposing Consolidation in Light of *Evers v. Marklein*, 2024 WI 31, 412 Wis. 2d 525, 8 N.W.3d 395. We denied both motions on October 25, 2024.[11]

---

[10] We granted the Legislature's motion for stay pending appeal on August 17, 2022, on the ground that "[t]he circuit court's analysis was inconsistent with our supreme court's analysis in *SEIU*, which concerned a motion for a stay of a decision involving the same statute with substantially similar facts."

[11] In further support of our order denying the motions, we explain as follows. First, although there was a brief question on the subject during oral argument, there has never been any motion by the parties nor intention of the court to consolidate this appeal with *Wisconsin State Legislature v. Kaul*, No. 2022AP431. This opinion renders that part of the motion regarding consolidation moot. Second, while the Legislature aptly notes that the identification of supplemental authority in the DOJ's motion violates the statutory notice requirements of WIS. STAT. RULE 809.19(10), pursuant to which a brief letter is to be filed, and could result in a summary denial, the court will address the motion on its merits.

The court is cognizant of *Evers v. Marklein*, 2024 WI 31, 412 Wis. 2d 525, 8 N.W.3d 395, and has addressed that decision herein. *See infra* note 17. For the reasons set forth therein, and upon the following grounds, the DOJ's motion for a stay is denied: (1) *Marklein* did not overrule *SEIU v. Vos*, 2020 WI 67, 393 Wis. 2d 38, 946 N.W.2d 35; (2) because *Marklein* applies "[a]fter the legislative process has been completed," 412 Wis. 2d 525, ¶23, it does not undermine the presumption of constitutionality; (3) *Marklein* does not address the legislature's interests with respect to settling litigation; and (4) the issues in this appeal, contrary to those in *Marklein*, involve settlements where the state is taking money into the general fund.

**STANDARD OF REVIEW**

¶14 Because it is a question of law, ***Racine County v. Oracular Milwaukee, Inc.***, 2010 WI 25, ¶24, 323 Wis. 2d 682, 781 N.W.2d 88, we review a circuit court's summary judgment decision de novo, ***Waity v. LeMahieu***, 2022 WI 6, ¶17, 400 Wis. 2d 356, 969 N.W.2d 263, "applying the well-established [statutory] standards," ***Benson v. City of Madison***, 2017 WI 65, ¶19, 376 Wis. 2d 35, 897 N.W.2d 16 (citation omitted). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." ***M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.***, 195 Wis. 2d 485, 497, 536 N.W.2d 175 (Ct. App. 1995); *see* WIS. STAT. § 802.08(2). "As here, when both sides have filed cross-motions for summary judgment, the parties concede there are no issues of material fact, waive trial, and stipulate to the court's resolution of the legal issues." ***Zurich Am. Ins. Co. v. Wisconsin Physicians Servs. Ins. Corp.***, 2007 WI App 259, ¶10, 306 Wis. 2d 617, 743 N.W.2d 710.

¶15 "The constitutionality of a statute is [also] a question of law which we review *de novo*." ***Appling v. Walker***, 2014 WI 96, ¶17, 358 Wis. 2d 132, 853 N.W.2d 888 (citation omitted); ***Coulee Cath. Schs. v. LIRC***, 2009 WI 88, ¶31, 320 Wis. 2d 275, 768 N.W.2d 868. "The party challenging the constitutionality of a statute 'must prove beyond a reasonable doubt that the act is unconstitutional.'" ***Appling***, 358 Wis. 2d 132, ¶17 (quoting ***Georgina G. v. Terry M.***, 184 Wis. 2d 492, 515, 516 N.W.2d 678 (1994)). Not only that, "every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." ***Appling***, 358 Wis. 2d 132, ¶17 (citation omitted).

## DISCUSSION

¶16    "[O]ur state constitution … created three branches of government, each with distinct functions and powers." *Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶11, 376 Wis. 2d 147, 897 N.W.2d 384 (omission in original; quoting *Panzer v. Doyle*, 2004 WI 52, ¶48, 271 Wis. 2d 295, 680 N.W.2d 666, *overruled on other grounds by* *Dairyland Greyhound Park, Inc. v. Doyle*, 2006 WI 107, 295 Wis. 2d 1, 719 N.W.2d 408).  Because the founders wanted to make sure "'that the power of making ought to be kept distinct from that of expounding[] the laws,' they designed a judiciary that would be able to interpret the laws 'free from potential domination by other branches of government.'" *Kisor v. Wilkie*, 588 U.S. 558, 614 (2019) (Gorsuch, J., concurring; footnote omitted; citations omitted).

> To adapt the law to changing circumstances, the founders thought, the collective wisdom of the people's representatives is needed.  To faithfully execute the laws often demands the sort of vigor hard to find in management-by-committee.  And to resolve cases and controversies over past events calls for neutral decisionmakers who will apply the law as it is, not as they wish it to be.

*Gutierrez-Brizuela v. Lynch*, 834 F.3d 1142, 1149 (10th Cir. 2016) (Gorsuch, J., concurring).

¶17    In *State v. Horn*, 226 Wis. 2d 637, 643-44, 594 N.W.2d 772 (1999), our supreme court deftly summarized these concepts as we apply them in Wisconsin:

> Shared powers lie at the intersections of these exclusive core constitutional powers.  These "[g]reat borderlands of power" are not exclusive to any one branch.  "While each branch jealously guards its exclusive powers, our system of government envisions the branches sharing the powers

> found in these great borderlands. Ours is a system of 'separateness but interdependence, autonomy but reciprocity.'" The branches may exercise power within these borderlands but no branch may unduly burden or substantially interfere with another branch. "This subtle balancing of shared powers, coupled with the sparing demarcation of exclusive powers, has enabled a deliberately unwieldy system of government to endure successfully for nearly 150 years."

(Citations omitted.)

¶18     Legal interpretation "has been, 'emphatically,' 'the province and duty of the judicial department' for at least 221 years." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024) (quoting *Marbury v. Madison*, 5 U.S. 137, 177 (1803)). "Judges have always been expected to apply their 'judgment' *independent* of the political branches when interpreting the laws those branches enact." *Loper Bright*, 144 S. Ct. at 2273 (citing THE FEDERALIST NO. 78, at 469 (Alexander Hamilton) (Clinton Rossiter ed., 1961)). It is with this understanding of the core powers of our tripartite system of government that we have reviewed the current issue.[12]

---

[12] The Legislature continues to assert that the DOJ lacks standing to challenge WIS. STAT. § 165.08(1) under *State v. City of Oak Creek*, 2000 WI 9, 232 Wis. 2d 612, 605 N.W.2d 526, but asks this court to decide this appeal on the merits since the issues have been fully developed. The DOJ asserts that the Legislature abandoned its standing and claim preclusion arguments. We disagree that the arguments were abandoned, but we shall, regardless, resolve this appeal on the merits. *See Teigen v. WEC*, 2022 WI 64, ¶¶16-17, 403 Wis. 2d 607, 976 N.W.2d 519 (explaining that standing in Wisconsin is limited only by prudential concerns and noting the policy in favor of hearing "cases presenting 'carefully developed and zealously argued' issues" (citation omitted)), *overruled on other grounds by Priorities USA v. WEC*, 2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429.

### I. The DOJ's challenge to WIS. STAT. § 165.08(1) based on unconstitutional transfer of a core executive power fails.

¶19 We are a society of laws—laws to protect our rights and liberties, laws to keep us safe, laws to advance the public good. Our citizens model their lives on the laws enacted by our legislature; they are entitled to proper notice of those laws. *See State ex rel. Singh v. Kemper*, 2016 WI 67, ¶39, 371 Wis. 2d 127, 883 N.W.2d 86; *see also Weaver v. Graham*, 450 U.S. 24, 28-29 (1981). But, laws are enacted by men and women, which means they are not inherently infallible. *See SEIU*, 393 Wis. 2d 38, ¶30 ("If men were angels, no government would be necessary." (quoting THE FEDERALIST NO. 51, at 322 (James Madison) (Clinton Rossiter ed., 1961)). Therefore, to ensure that our laws do not inappropriately infringe upon our citizens' rights, an important element of our laws enables injured individuals to challenge whether any specific statute is constitutional. *State v. Smith*, 2010 WI 16, ¶14, 323 Wis. 2d 377, 780 N.W.2d 90 ("The touchstone of due process is protection of the individual against arbitrary action of government." (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974))). Without that ability, the people would be subject to the tyranny of lawmakers.

### A. The DOJ raises a hybrid challenge.

¶20 The DOJ's primary argument is that "[a]s applied to the two challenged categories of actions, [WIS. STAT. §] 165.08(1) unconstitutionally transfers core executive power to the legislative branch." A party may challenge the constitutionality of a statute by raising a facial challenge (asserting that the statute is unconstitutional in all applications), an as-applied challenge (asserting that it is unconstitutional in a specific application), or a hybrid challenge with characteristics of both. *SEIU*, 393 Wis. 2d 38, ¶¶37-38. Citing *SEIU*, *id.*, ¶45, and *Gabler*, 376 Wis. 2d 147, ¶29, the circuit court concluded the DOJ's

constitutionality challenge here is a hybrid challenge that has "characteristics of both a facial and an as-applied challenge" because it is a "broad challenge to a specific category of applications." This court agrees.

¶21 A hybrid challenge "must meet the standard for a facial challenge" as to an identified category of applications. *Gabler*, 376 Wis. 2d 147, ¶29. This means that the DOJ must establish "that, as to the specific category of applications, the statute could not be constitutionally enforced under any circumstances." *SEIU*, 393 Wis. 2d 38, ¶45. This, as our supreme court has stated, "is no small wall to scale. Proving a legislative enactment cannot ever be enforced constitutionally 'is the most difficult of constitutional challenges' and an 'uphill endeavor.'" *Id.*, ¶39 (citation omitted).

¶22 "There is a strong presumption that a legislative enactment is constitutional." *Martinez v. DILHR,* 165 Wis. 2d 687, 695, 478 N.W.2d 582 (1992); *Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund*, 2018 WI 78, ¶25, 383 Wis. 2d 1, 914 N.W.2d 678. A challenger has a "heavy burden" to "prove that the statute is unconstitutional beyond a reasonable doubt." *State v. Cole*, 2003 WI 112, ¶11, 264 Wis. 2d 520, 665 N.W.2d 328. Our supreme court has "repeatedly held that it 'indulges every presumption to sustain the law if at all possible, and if any doubt exists about a statute's constitutionality, we must resolve that doubt in favor of constitutionality'" and "uphold the statute as constitutional." *Id.* (citation omitted).

¶23 Thus, the DOJ has the burden to show that WIS. STAT. § 165.08(1) "could never be constitutionally applied" to any case within its selected two categories "even if it could be constitutionally applied to other[]" cases in other categories. *SEIU*, 393 Wis. 2d 38, ¶45.

**B.    The settlement of all actions in the DOJ's two categories does not constitute a core executive power.**

¶24    The DOJ's argument rests on the premise that settlement of actions in the two categories of cases it has identified constitutes a core executive power—one that cannot be transferred to the legislature without violating Wisconsin's separation of powers doctrine.[13]  The Legislature argues that it has an institutional interest in the settlement of at least some of the actions included in the two categories, making the settlements at issue a shared power and the application of WIS. STAT. § 165.08(1) constitutional in those cases.

¶25    "[I]t is neither possible nor practicable 'to classify accurately all the various governmental powers and to say that this power belongs exclusively to one department and that power belongs exclusively to another.'"  *State v. Holmes*, 106 Wis. 2d 31, 42-43, 315 N.W.2d 703 (1982) (quoting *Integration of Bar Case*, 244 Wis. 8, 45, 11 N.W.2d 604 (1943)).  Like the federal constitution, our state constitution elucidates the doctrine of separation of powers by its structure rather than its language.  "Unlike some state constitutions … the federal Constitution does not include a clause expressly adopting the separation of powers."  *Gabler*, 376 Wis. 2d 147, ¶6.  "Instead, because '[t]he Constitution enumerates and separates the powers of the three branches of Government in Articles I, II, and III, ... it is this 'very structure' of the Constitution that exemplifies the concept of separation of powers.'"  *Id.* (alteration and omission in original; quoting *Miller v. French*, 530 U.S. 327, 341 (2000)).  Our supreme court further explained:

---

[13] In addition to arguing that litigation on behalf of the state in both of its identified categories is a core executive power in which the Legislature has no institutional interests, the DOJ asserts that the presumption of statutory constitutionality is not applicable.  On the latter argument, the DOJ acknowledges that precedent is not in its favor and simply reserves its right to challenge the presumption in the Wisconsin Supreme Court.

> There are "great borderlands of power"—"twilight zone[s]"—"vast stretches of ambiguous territory"—in which it is difficult to determine where the functions of one branch end and those of another begin. The doctrine of separation of powers does not demand a strict, complete, absolute, scientific division of functions between the three branches of government. The separation of powers doctrine states the principle of shared, rather than completely separated powers. The doctrine envisions a government of separated branches sharing certain powers.

*Holmes*, 106 Wis. 2d at 43 (footnotes omitted; citations omitted).

¶26     The *SEIU* court already held that "the attorney general's role is not, at least in all cases, a core executive function." 393 Wis. 2d 38, ¶67. "While representing the State in litigation is predominantly an executive function, it is within those borderlands of shared powers, most notably in cases that implicate an institutional interest of the legislature." *Id.*, ¶63. The "institutional interests of the legislature are sufficient to defeat [a] facial challenge to the provisions authorizing legislative intervention in certain cases, and those requiring legislative consent to defend and prosecute certain cases." *Id.*, ¶71. The pertinent question now, therefore, is whether there are any institutional interests of the Legislature implicated in the two categories of cases identified by the DOJ. Simply put, if a settlement in one of the two categories of cases implicates an institutional interest of the Legislature, then settlement of that case is a power shared by the legislative and executive branches—not, as the circuit court held—a core power of the executive branch. *See id.*, ¶67.

¶27     The Legislature asserts that *SEIU* sets forth multiple institutional interests it has in settling cases within the DOJ-identified categories. *See id.*, ¶73. One of these—the power of the purse—is sufficient on its own to defeat this hybrid constitutional challenge. There is no dispute that the legislature has the power of the purse. *See* WIS. CONST. art. VIII, § 2. In *SEIU*, our supreme court

15

discussed that power and its effect on the facial challenge to the very same statute at issue here just three years ago:

> [W]here litigation involves requests for the state to pay money to another party, the legislature, in at least some cases, has an institutional interest in the expenditure of state funds sufficient to justify the authority to approve certain settlements.

*Id.*, 393 Wis. 2d 38, ¶69.[14]

¶28 Of course, at issue here are the settlements the attorney general enters into in civil actions it prosecutes—in other words, cases where the state is not required to *pay* funds to other parties. The circuit court concluded that *SEIU*'s identification of the legislature's powers of the purse as an institutional interest is limited to those cases where the *expenditure* of state funds are at issue, holding (with respect to the first category of cases)[15] that:

> Legislative approval of a settlement agreement in which a defendant agrees to pay money *to* the state or other entity to remedy harms it committed does not advance, protect, or otherwise implicate the Legislature's constitutional power to direct, by appropriation, the payment of money from the treasury.
>
> … In granting itself unilateral veto powers over the settlement of civil enforcement actions initiated by the Attorney General, the Legislature impermissibly interferes with the execution of the laws.

---

[14] Our supreme court further noted that the Attorney General conceded "that WIS. STAT. § 165.25(6)(a)1. has constitutional applications where the power of the purse is implicated." *SEIU*, 393 Wis. 2d 38, ¶69.

[15] In its first summary judgment order, the circuit court defined the first category of civil enforcement actions as those "cases initiated by the Attorney General or Department of Justice in its discretion or upon the referral of an executive agency, not those in which a legislative body requests or authorizes the Attorney General to file suit" and stated that "as plaintiff-side civil enforcement actions, these are not cases in which a settlement would require the state to pay money to another party."

¶29   With respect to the second category of cases,[16] the circuit court similarly held:

> A settlement agreement in which a defendant agrees to pay money to the State to resolve legal claims arising from the administration of statutory programs does not implicate the power of the purse, *i.e.*, the Legislature's constitutional power to direct, by appropriation, the payment of money from the treasury.
>
>    … Contrary to the Legislature's argument, there is no conceptual problem created by such settlements.  Given that such a settlement would not require any expenditure of state funds, the Legislature's powers under WIS. CONST. art. VIII, § 2 are not implicated.  The Legislature's desire to renegotiate settlements involving complex civil litigation in which it has played no role is not an institutional interest with constitutional dimension.

¶30   The Legislature relies on evidence presented in the circuit court to set forth the basis for its institutional interests in both categories of civil actions.  It asserts that plaintiff-side settlements often collect large sums of money—money that belongs to the state, not the DOJ.  Because one of the Legislature's powers is to appropriate state funds, it asserts that WIS. STAT. § 165.08(1) allows it to determine how the attorney general distributes settlement funds and to ensure that those funds are utilized for purposes designated by the legislature.  In other words,

---

[16] In the second summary judgment order, the circuit court defined the second category of cases as:

> civil lawsuits brought by the Department of Justice at the direction of an executive-branch agency or officer relating to programs they are statutorily responsible for administering. Such lawsuits include civil actions seeking to enforce contracts entered by executive agencies and actions seeking compensation for tort damages to state property.  As clarified by the amended complaint, this category of cases does not include any settlement requiring the State to pay money to a defendant.

it contends that both expected expenditures and expected revenues fall within its purview.

¶31 The Wisconsin Attorney General has issued a formal opinion declaring that our state constitution "requires" the legislature to "plan in such a way as to insure that on an annual basis, revenues are sufficient to defray the state's expenses." 74 Op. Att'y Gen. 202, 203 (1985) (OAG 39-85). This necessarily implies that the legislature must look to, contemplate, and oversee "other sources of income"—including settlement proceeds. *See* WIS. CONST. art. VIII, § 5; *State ex rel. Owen v. Donald*, 160 Wis. 21, 122, 151 N.W. 331 (1915) ("[T]he constitution plainly contemplates legislative action to determine the sufficiency of income each year to cover the regular expenses until the next opportunity for such action, and for a legislative levy of a tax therefor and to make up any deficiency for the preceding year."). Indeed, the DOJ concedes that "the Legislature must calculate how much income is needed to cover that year's anticipated expenses plus any deficiency from the previous year." How can the legislature do so without taking into account settlement proceeds—proceeds that range from thousands of dollars to many millions of dollars?[17]

---

[17] We note that, in *Evers v. Marklein*, 412 Wis. 2d 525, our supreme court recently considered the application of legislative oversight (or legislative vetoes) by the Joint Finance Committee in another context. That opinion is distinguishable and does not control here because it involved funds that had already been appropriated by the legislature for use by an executive agency. *Id.*, ¶24. The *Marklein* court held that "[a]fter the legislative process has been completed and funds have been appropriated, the legislature cannot insert itself into the machinery of the executive branch in an attempt to control the executive branch's ability to carry out the law." *Id.*, ¶23.

Significantly, the *Marklein* court favorably cites the majority analysis in *SEIU* throughout its opinion. Notwithstanding the DOJ's repeated arguments against *SEIU* and its attempts to advocate for use of the dissent's analysis, *SEIU*'s majority opinion remains controlling precedent and is dispositive of this appeal.

¶32 The Legislature argues that this power of the purse—including the power to decide how state funds are to be allocated—potentially implicates another institutional interest pursuant to article IV, section 1 of the Wisconsin Constitution: the legislature's power to establish policy for the state. *See Flynn v. DOA*, 216 Wis. 2d 521, 529, 576 N.W.2d 245 (1998); *State ex rel. Vanko v. Kahl*, 52 Wis. 2d 206, 216, 188 N.W.2d 460 (1971) ("Public policy is for the legislature to establish …."). The Legislature asserts that settlements of some plaintiff-side civil actions may include provisions requiring action by the state (or its officials) in a manner that could have public policy implications.

¶33 For instance, according to the Legislature's argument, settlements could contain provisions that would allow a defendant to perform a certain act or make a certain payment that would prohibit the state from collecting additional penalties for the general fund. In addition, the Legislature asserts that proposed settlement terms could "contain a condition on the state expenditure" of settlement funds that could "bind the State into performing public expenditures that implement a particular public policy."[18]

---

[18] The Legislature offers two examples of prior settlements: a recent settlement with an opioid manufacturer worth approximately $400 million and a 1990 multi-state tobacco settlement where the State received over $1.2 billion over approximately a decade. The Legislature contends that it has an "unquestionable interest" in the distribution and use of state money obtained from these kinds of large settlements (as with state money of any amount) and should have a constitutional "seat at the table" in reaching such settlements where the monies' distribution is included in the settlements' terms. Unlike in the tobacco settlement, the attorney general obtained the Joint Finance Committee's approval to bind the state to the opioid settlement pursuant to WIS. STAT. § 165.12. The Legislature had a say in decisions regarding that extraordinarily large amount of money, which was distributed into various categories (including data collection and monitoring, prevention, harm reduction, treatment, recovery, and local government opioid reduction policies). Policy choices like these, the Legislature argues, are within its prerogative. *See State ex rel. Vanko v. Kahl*, 52 Wis. 2d 206, 216, 188 N.W.2d 460 (1971) ("Public policy is for the legislature to establish …."). To disallow the legislature from participating in such decision-making would imperil its powers to determine how significant funds are allocated to set policy.

¶34 Given our conclusion that settlement of at least some cases in the DOJ's two identified categories implicates the legislature's power of the purse, we need not discuss this espoused public policy interest further. The Legislature need only establish one institutional interest to show at least one viable constitutional application in each of the two categories of cases the DOJ has identified in its constitutional challenge. In other words, given the DOJ's burden to show that there are no constitutional applications in these categories, one arrow is enough to fell the DOJ's constitutional challenge.

¶35 Finally, the DOJ's assertion that *SEIU*'s holding is limited and does not apply to the two categories of cases at issue but only to defense-side settlements is without merit. True, the *SEIU* court "express[ed] no opinion on whether individual applications or categories of applications may violate the separation of powers, or whether the legislature may have other valid institutional interests supporting application of these laws." 393 Wis. 2d 38, ¶73. However, our supreme court clearly set forth the rule that where a settlement implicates an institutional interest of the legislature, settlement is a shared power, and WIS. STAT. § 165.08(1) is constitutional as to that settlement. *SEIU*, 393 Wis. 2d 38, ¶63. Because we have concluded that the Legislature has a legitimate institutional interest via its power of the purse in at least some settlements in the two categories of cases, there is a sufficient basis to uphold the constitutionality of § 165.08(1) in the face of this challenge.

¶36 In summary, there are shared powers at issue here, and the legislature has at least one institutional interest in settling cases in each of the two categories identified by the DOJ (including plaintiff-side civil actions where funds are obtained by the state for its coffers and not paid out to other parties). Accordingly, the DOJ has failed to establish beyond a reasonable doubt that WIS.

STAT. § 165.08(1) is unconstitutional as to every case at issue. That alone could conclude this opinion. Nevertheless, we also address the DOJ's alternative argument.

## II. The DOJ's alternative "unduly burdensome" argument likewise cannot stand.

¶37 As an alternative argument, the DOJ relies upon the dissent in *SEIU* and asserts that, even if settlement is a shared power in some cases in the identified categories, WIS. STAT. § 165.08(1) violates the separation of powers because it "unduly burdens and substantially interferes with the executive branch's ability to perform its constitutional settlement role." The majority in *SEIU* rejected this exact argument when it held that "[w]here the legislature has appropriate institutional interests, legislative exercise of this shared power [or the attorney general's litigation authority] in at least some cases does not unduly burden or substantially interfere with the attorney general's executive authority," and "[h]ence, the facial challenge [to § 165.08(1)] gets nowhere under an 'unduly burdensome' shared power analysis." *SEIU*, 393 Wis. 2d 38, ¶72 n.22. Nevertheless, the DOJ makes the same argument to us.

### A. Precedent and stare decisis are relevant and applicable in this appeal.

¶38 A key factor underpinning our decision in this aspect of the appeal is the concept of precedent and the established judicial doctrine of stare decisis. While that doctrine is not an "inexorable command," it "promotes the evenhanded, predictable, and consistent development of legal principles." *Payne v. Tennessee*, 501 U.S. 808, 827-28 (1991). Wisconsin courts follow the doctrine "scrupulously because of our abiding respect for the rule of law." *Johnson Controls, Inc. v. Employers Ins. of Wausau*, 2003 WI 108, ¶94, 264 Wis. 2d 60, 665 N.W.2d 257.

Judicial reliance on stare decisis is "a foundation stone of the rule of law." ***Michigan v. Bay Mills Indian Cmty.***, 572 U.S. 782, 798 (2014). Stare decisis "contributes to the actual and perceived integrity of the judicial process" by establishing that courts make decisions based upon the law and that their opinions are not simply their personal preferences. ***Payne***, 501 U.S. at 827. "Fidelity to precedent ensures that existing law will not be abandoned lightly." ***Johnson Controls, Inc.***, 264 Wis. 2d 60, ¶94 (citation omitted). This concept is more compelling when "[t]here has been no change in the relevant statutes, no change in the constitution, and no change in the underlying principles."[19] ***State v. Lindell***, 2001 WI 108, ¶148, 245 Wis. 2d 689, 629 N.W.2d 223 (Ann Walsh Bradley, J., concurring). In this appeal, the DOJ asks us to disregard precedent in favor of a dissent.

¶39 Dissents have a valued place in legal jurisprudence. They present arguments that may even eventually gain acceptance. *See* Edward McGlynn Gaffney, Jr., *The Importance of Dissent and the Imperative Judicial Civility*, 28 Val. U. L. Rev. 583, 583 (1994) ("A dissent in a court of last resort is an appeal to the brooding spirit of the law, to the intelligence of a future day, when a later decision may possibly correct the error into which the dissenting judge believes the court to have been betrayed...." (omission in original; quoting Charles Evan

---

[19] "The decision to overturn a prior case must not be undertaken merely because the composition of the court has changed." ***Johnson Controls, Inc.***, 2003 WI 108, ¶95, 264 Wis. 2d 60, 665 N.W.2d 257. *See also* ***State v. Lindell***, 2001 WI 108, ¶146, 245 Wis. 2d 689, 629 N.W.2d 223 (Ann Walsh Bradley, J., concurring); ***State v. Stevens***, 181 Wis. 2d 410, 442, 511 N.W.2d 591 (1994) (Abrahamson, J., concurring), *overruled on other grounds by* ***Richards v. Wisconsin***, 520 U.S. 385, 396 (1997); ***Welch v. State Farm Mut. Auto. Ins. Co.***, 122 Wis. 2d 172, 182, 361 N.W.2d 680 (1985) (Steinmetz, J., dissenting). Even though courts may change after elections, that should not create a do-over mentality since "frequent and careless departure from prior case precedent undermines confidence in the reliability of court decisions." ***Johnson Controls, Inc.***, 264 Wis. 2d 60, ¶95.

Hughes, THE SUPREME COURT OF THE UNITED STATES 68 (1928))). But they are not precedent. We must follow the binding decision of our supreme court in *SEIU* and, accordingly, we must reject the DOJ's invitation to engage in the "unduly burdensome" shared powers analysis with respect to WIS. STAT. § 165.08(1).[20]

### B. The DOJ fails under the unduly burdensome shared power analysis.

¶40    Even if this court were to conduct the shared power analysis categorically rejected by *SEIU*, the DOJ has failed to overcome its heavy burden of proof to show "beyond a reasonable doubt that the statute unduly burdens or substantially interferes with [its] ability to function." *See Flynn*, 216 Wis. 2d at 554. The DOJ has attempted to articulate some of the burdens the statute may impose, including that the legislative process "stymies" the DOJ's work because it "lacks confidentiality and real time authorization." It also asserts that the DOJ and executive agencies may simply decide not to prosecute civil actions because they are "at the whim" of the Joint Finance Committee.[21] In essence, the DOJ complains the law has "infected and necessarily altered [its] decision-making at

---

[20] The DOJ relies upon the same cases, all of which were rejected by our supreme court in *SEIU*. These rejected cases all concern statutes that potentially interfere with the judicial branch, not the other branches. *Cf. E.B. v. State*, 111 Wis. 2d 175, 330 N.W.2d 584 (1983); *State ex rel. Friedrich v. Circuit Ct. for Dane Cnty.*; 192 Wis. 2d 1, 531 N.W.2d 32 (1995); *State v. Chvala*, 2003 WI App 257, 268 Wis. 2d 451, 673 N.W.2d 401. We are bound by that *SEIU* majority holding.

[21] The DOJ also asserts that WIS. STAT. § 165.08(1) has created administrative harms: (1) the law does not address how and when the Joint Finance Committee shall consider proposed settlements; (2) there is uncertainty as to whether a proposed settlement will be approved by the Joint Finance Committee; (3) there is no appeal procedure; (4) there is a lack of confidentiality due to the open sessions of the Joint Finance Committee; (5) the general public is disserved by any delays in settlements concerning remediation or the cessation of environmental harm; and (6) mediations have lost value. This last alleged harm would seem far-fetched: a good negotiator could use the approval process to their benefit during a mediation.

every stage." But the DOJ fails to provide concrete evidence of these situations despite the fact that the statute has been in effect for over three years.

¶41 Unsubstantiated speculation is not sufficient to establish an undue burden or substantial interference with another branch's exercise of its authority. "[I]n an as-applied challenge, we assess the merits of the challenge by considering the facts of the particular case in front of us, 'not hypothetical facts in other situations.'" *State v. Wood*, 2010 WI 17, ¶13, 323 Wis. 2d 321, 780 N.W.2d 63 (quoting *State v. Hamdan*, 2003 WI 113, ¶43, 264 Wis. 2d 433, 665 N.W.2d 785). At a minimum, concrete examples are necessary to show that the statute unduly burdens or substantially interferes with the DOJ's ability to function beyond a reasonable doubt. *See Flynn*, 216 Wis. 2d at 554.

¶42 The DOJ argues that it submitted fifteen cases to the Joint Finance Committee (many involving subrogation rights with respect to benefits paid from Medicaid funds) that it asserts were not reviewed. The DOJ then began to "appear in subrogation cases differently so that it is not statutorily 'prosecuting'" such matters.[22] The DOJ also asserts that in a case that was pending in 2022 involving millions of dollars, the defendant did not want to engage in settlement negotiations due to possible Joint Finance Committee gamesmanship and the lack of confidentiality. Due to that hesitancy, the DOJ claims it had to prepare for a "potentially unnecessary" trial and was forced to divert staff and resources from other matters. Again, this does not rise to the level of an unreasonable burden beyond a reasonable doubt.

---

[22] We are uncertain what it means to appear "differently," but the concern seems to have been addressed such that it is not still a burden (to the extent it formerly was one in this line of cases).

¶43 Even assuming, arguendo, that these fifteen or so cases[23] were impacted to some degree—and have been burdened to some extent—there is no evidence that this is an "undue" burden or "substantial" interference; the DOJ has not articulated what number of cases are prosecuted annually, or what percentage of the office's annual caseload has been affected. In fact, given that the DOJ appears to have removed the impact on future subrogation rights cases such that that set of cases is no longer burdened by the statute, there may be only a single case that the DOJ cannot settle and must take to trial. The DOJ concedes that "in some matters, [the Joint Finance Committee] met fast enough for a matter to settle." The DOJ simply has not established an undue burden or substantial interference with its functioning beyond a reasonable doubt.

¶44 The DOJ had more than three years[24] after WIS. STAT. § 165.08(1) was enacted to set out concrete examples of the Joint Finance Committee's

---

[23] Because the DOJ carries the burden of proof, its failure to present any cases leads this court to conclude that no other cases have been impacted.

[24] The benefit of having several years in which to review the actual, practical implications and practices of the new statute, was one factor that one of the dissents in *SEIU* was sincerely concerned did not exist in that case. Chiding the supreme court's "impatience" in "not allow[ing] the challenges to [the statute] to percolate," the dissent asserted that deciding the issue at that time would "prove to be an unfortunate waste of judicial resources." *SEIU*, 393 Wis. 2d 38, ¶165 (Dallet, J., concurring in part, dissenting in part). That concurrence/dissent further acknowledged the Attorney General had failed to present sufficient proof:

> In this case, however, there has been no factual development as to the amount and types of cases the attorney general litigates, the types and frequency of resolutions pursued in those cases, or the kinds of burdens the Litigation Control provisions now impose on that litigation. Only after development of the facts can a court determine whether the sweep of the Litigation Control provisions unduly burdens or substantially interferes with the attorney general's ability to execute the law through litigation.

*Id.*, ¶186.

approval process causing an undue burden to the DOJ or substantially interfering with the DOJ's ability to settle any cases. It has failed to present that evidence; it has only made vague references to confidentiality and timing concerns. That is insufficient. *See Wood*, 323 Wis. 2d 321, ¶13; *Hamdan*, 264 Wis. 2d 433, ¶43. In fact, the DOJ conceded (in December 2021) that it could not recall any civil matters that the attorney general chose not to prosecute due to the approval process or any times an executive agency likewise chose not to commence a civil action due to a possible Joint Finance Committee veto. Moreover, even if we agreed that one (or even a few) cases may have not been filed or other parties may have forgone public settlements due to fear of disclosure of confidential information, such limited complications can hardly be said to be a burden at all. And, the interference, if any, is no more than minimal.

¶45 As noted, it is not the judiciary's place to opine on the motives behind or wisdom of a particular piece of legislation. *Tomczak v. Bailey*, 218 Wis. 2d 245, 264-65, 578 N.W.2d 166 (1998); *Joyce v. County of Dunn*, 192 Wis. 2d 699, 708, 531 N.W.2d 628 (Ct. App. 1995) ("The wisdom of a legislative act is not subject to judicial scrutiny."); *see also EEOC v. City of Janesville*, 630 F.2d 1254, 1259 (7th Cir. 1980). To the contrary, we may even disagree with certain legislation. *See Flynn*, 216 Wis. 2d at 554. "But unless we can say beyond a reasonable doubt that the statute unduly burdens or substantially interferes with [an] ability to function, we must uphold [the statute]." *Id.* Here, we cannot say either part of the undue burden and substantial interference analysis has been shown for any case. That is a far cry from the necessary standard and the requirement in an as-applied challenge that all cases must be impaired. The high wall has not been scaled.

**CONCLUSION**

¶46    No one branch—or official—stands above the others with unfettered authority to act as it pleases.  *SEIU*, 393 Wis. 2d 38, ¶33 ("The Wisconsin constitution creates three separate co-ordinate branches of government, no branch subordinate to the other, no branch to arrogate to itself control over the other except as is provided by the constitution, and no branch to exercise the power committed by the constitution to another." (quoting *Holmes*, 106 Wis. 2d at 42)).  However, there are some areas where our three branches of government share powers "at the intersections of these exclusive core constitutional powers."  *Horn*, 226 Wis. 2d 637, ¶11.  The statute at issue falls within those "[g]reat borderlands of power."  *See State ex rel. Friedrich v. Circuit Ct. for Dane Cnty.*, 192 Wis. 2d 1, 14, 531 N.W.2d 32 (1995).

¶47    The powers in question here are not core powers of the executive branch within Wisconsin's separation of powers doctrine but rather shared between the executive and the Legislature.  The DOJ has failed to overcome the presumption of constitutionality and failed to meet its heavy burden of establishing that the statute is unconstitutional in every single application within the two categories of cases it identifies.  We conclude that, because the Legislature has established at least one institutional interest to support its ability to review proposed settlements of civil actions in each of the two categories of cases, the circuit court erred when it found WIS. STAT. § 165.08(1) unconstitutional as applied.

¶48    In addition, the statute does not unduly burden nor does it substantially interfere with the functioning of the executive branch.  Accordingly,

we reverse both orders of the circuit court and remand for entry of summary judgment in favor of the Legislature as to both categories of cases.

*By the Court.*—Orders reversed and cause remanded with directions.

Recommended for publication in the official reports.

No.    2022AP790 (D)


¶49    NEUBAUER, J. (*dissenting*).    I would affirm the circuit court's orders declaring WIS. STAT. § 165.08(1) (2021-22)[1] unconstitutional as applied to the two categories of civil actions at issue in this case.    The majority's decision to reverse those orders cannot be reconciled with Wisconsin's separation of powers jurisprudence.

¶50    Our constitution gives the legislature[2] broad authority to implement its policy preferences and spend government money through its core power of enacting legislation.    But "[o]nce the legislature passes a bill that is signed by the governor and becomes law, … the legislature cannot insert itself into the machinery of the executive branch in an attempt to control the executive branch's ability to carry out the law."    *Evers v. Marklein*, 2024 WI 31, ¶23, 412 Wis. 2d 525, 8 N.W.3d 395.    Execution of the law is a power our constitution "assigns … to the executive branch alone."    *Id.*    Separation of powers principles exist in part to prevent one branch from intruding into another branch's zone of exclusive authority.

¶51    As applied to the two categories of cases at issue here—(1) cases "brought under statutes that the Attorney General is charged with enforcing" and (2) cases "the [d]epartment [of justice] prosecutes on behalf of executive-branch

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Like the majority, I refer to the appellants collectively as "the Legislature" and use the noncapitalized "legislature" to refer to the legislative body generally.

agencies relating to the administration of the statutory programs they execute"— WIS. STAT. § 165.08(1) violates "[the] strict separation between the [executive and legislative] branches [that] is essential to the preservation of liberty." *Evers*, 412 Wis. 2d 525, ¶20. The statute transfers complete and unreviewable power to "compromise[] or discontinue[]" these cases from the executive branch to a legislative committee. *See* § 165.08(1). That power falls within the executive branch's core constitutional authority to enforce the law, and its arrogation to the legislature is untenable under Wisconsin case law and historical practice. Instead of carefully patrolling the boundaries that separate the branches, the majority gives its imprimatur to legislative overreach that separation of powers principles exist to prevent.

¶52 Even if the power to settle or discontinue actions in these categories of cases were a shared power, WIS. STAT. § 165.08(1) would still be unconstitutional because it unduly burdens and substantially interferes with the executive branch's role as enforcer of the law. As the circuit court recognized, § 165.08(1) "is akin to a legislative veto of executive action" because it gives the joint finance committee (JFC) exclusive and unreviewable power to accept, reject, or renegotiate the terms under which lawsuits in these two categories are resolved. The executive branch is thus left with no control over the ultimate disposition of civil actions it investigates, initiates, and litigates. Because that state of affairs is intolerable under our constitution, I respectfully dissent.

## I.

¶53 The tripartite systems of government established by our federal and state constitutions divide power among legislative, executive, and judicial branches "with the understanding that no branch … can subordinate, control, or

exercise the power of another branch." *Evers*, 412 Wis. 2d 525, ¶9. This diffusion of government power is "the bedrock of the structure by which we secure liberty in both Wisconsin and the United States." *Gabler v. Crime Victims Rts. Bd.*, 2017 WI 67, ¶3, 376 Wis. 2d 147, 897 N.W.2d 384; *see also Service Emps. Int'l Union, Loc. 1 v. Vos* (*SEIU*), 2020 WI 67, ¶30, 393 Wis. 2d 38, 946 N.W.2d 35.

¶54    The constitutional powers of each branch of government consist of exclusive powers and shared powers. *Evers*, 412 Wis. 2d 525, ¶10. The exclusive, core powers of each branch "are those that define its essential attributes." *SEIU*, 393 Wis. 2d 38, ¶104. These core powers "are not for sharing." *Evers*, 412 Wis. 2d 525, ¶10 (quoting *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶47, 382 Wis. 2d 496, 914 N.W.2d 21). Within each branch's exclusive zone of authority, "*any* exercise of authority by another branch of government is unconstitutional." *Gabler*, 376 Wis. 2d 147, ¶31 (citation omitted); *see also Evers*, 412 Wis. 2d 525, ¶10.

¶55    Though some governmental powers may defy easy classification as executive, legislative, or judicial, that is not the case with respect to the core powers relevant here. The legislative branch's core power, that of making laws, is "vested in a senate and assembly." WIS. CONST. art. IV, § 1. That power includes the prerogatives "to determine whether there shall be a law, to what extent the law seeks to accomplish a certain goal, and any limitations on the execution of the law." *Evers*, 412 Wis. 2d 525, ¶12; *see also Koschkee v. Taylor*, 2019 WI 76, ¶11, 387 Wis. 2d 552, 929 N.W.2d 600.

¶56    The legislature's power ordinarily ends, however, when it passes a law that is signed by the governor. From that point, it typically "plays no part in

enforcing our statutes." ***Evers***, 412 Wis. 2d 525, ¶23 (citation omitted). Enforcement of the law is the core power constitutionally assigned to the executive branch, which is charged with "tak[ing] care that the laws be faithfully executed." WIS. CONST. art. V, § 4; *see also **SEIU***, 393 Wis. 2d 38, ¶1 ("Executive power is power to execute or enforce the law as enacted."). Executive power is "vested in a governor," WIS. CONST. art. V, § 1, but the attorney general, the department of justice, and other state administrative agencies are also part of the executive branch and carry out executive functions. ***SEIU***, 393 Wis. 2d 38, ¶¶57, 60.

¶57 Broadly stated, "[t]he executive branch's role is to effectuate the policies passed by the legislature." ***Evers***, 412 Wis. 2d 525, ¶15. In doing so, "the executive branch must make decisions about how to enforce and effectuate the laws." ***Id.***, ¶16. The legislature may constitutionally limit "the exercise of executive discretion" through "[t]he text of the statutes [it] enact[s]," but once it does so, it ordinarily "lacks any constitutional authority to reject an executive decision short of exercising its lawmaking power with the full participation of the legislature." ***Id.***, ¶¶16, 21; *see also **Bowsher v. Synar***, 478 U.S. 714, 733-34 (1986) ("[O]nce Congress makes its choice in enacting legislation, … [it] can thereafter control the execution of its enactment only indirectly—by passing new legislation.").

¶58 "[S]hared powers 'lie at the intersections of the[] exclusive core constitutional powers.'" ***Evers***, 412 Wis. 2d 525, ¶11 (second alteration in original; quoting ***Gabler***, 376 Wis. 2d 147, ¶34). They are "exceptions to the default rule that legislative power is to be exercised by the legislative branch, executive power is to be exercised by the executive branch, and judicial power is to be exercised by the judicial branch." ***SEIU***, 393 Wis. 2d 38, ¶33. In these

"borderlands," multiple branches may exercise power, "but no branch may unduly burden or substantially interfere with another branch." *Id.*, ¶35 (citation omitted).

¶59    In analyzing separation of powers challenges to government action, courts "must be assiduous in patrolling the borders between the branches." *Tetra Tech*, 382 Wis. 2d 496, ¶45. We must also keep in mind the separation of powers' animating purpose—to neutralize "threats to liberty arising from the concentration of powers in one branch":

> Maintaining a strict separation between the branches is essential to the preservation of liberty because "a government with shared legislative and executive power could first 'enact tyrannical laws' then 'execute them in a tyrannical manner.'"    To prevent this dangerous concentration of power, the constitution prohibits "'the same persons who have the power of making laws to have also in their hands the power to execute them.'"

*Evers*, 412 Wis. 2d 525, ¶¶20, 27 (citations omitted). Indeed, those who drafted and advocated for our federal constitution were keenly aware of the danger of legislative intrusion into the core functions of the executive branch. *Bowsher*, 478 U.S. at 727; *see also Evers*, 412 Wis. 2d 525, ¶32. "[T]he debates of the Constitutional Convention, and the Federalist Papers, are replete with expressions of fear that the Legislative Branch of the National Government will aggrandize itself at the expense of the other two branches." *Buckley v. Valeo*, 424 U.S. 1, 129 (1976); THE FEDERALIST NO. 48, at 309 (James Madison) (Clinton Rossiter ed., 1961) ("The legislative department is everywhere extending the sphere of its activity and drawing all power into its impetuous vortex."). Separation of powers principles thus serve as a vital check on potential legislative encroachment into areas constitutionally assigned to the other branches. Though initially expounded in connection with the ratification of our federal constitution, these principles also

5

"inform our understanding of … the Wisconsin Constitution." *Gabler*, 376 Wis. 2d 147, ¶11.

## II.

¶60 In assessing the constitutionality of WIS. STAT. § 165.08(1) as applied to the two categories of civil actions at issue here, we must first decide whether the power to "compromise[] or discontinue[]" these lawsuits is a core or shared power. *See* § 165.08(1); *SEIU*, 393 Wis. 2d 38, ¶35. As an initial matter, no party disputes that litigation is a means of enforcing the law. Thus, the commencement and conduct of lawsuits by the department of justice against private parties to obtain financial or other redress for violations of the law is an exercise of executive power. The *SEIU* court acknowledged as much, describing this as "predominantly an executive function." *SEIU*, 393 Wis. 2d 38, ¶63; *see also Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 219 (2020) (characterizing agency head's ability to bring civil suits against private parties as "a quintessentially executive power"); *Buckley*, 424 U.S. at 138 ("A lawsuit is the ultimate remedy for a breach of the law, and it is to the President, and not to the Congress, that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" (citation omitted)).

¶61 We may also consult our state's historical practices and laws in determining whether a power is exclusive to one branch or shared. *See State ex rel. Friedrich v. Circuit Ct. for Dane Cnty.*, 192 Wis. 2d 1, 20, 531 N.W.2d 32 (1995). Here, the relevant history confirms the executive's longstanding predominance in prosecuting civil litigation on behalf of the state. From the time of our state's founding, the legislature assigned to the attorney general, through legislation, the responsibility of representing the state and its agencies in civil

litigation. WIS. REV. STAT. ch. 9, §§ 36-37 (1849). The Legislature has pointed to no practice or law before the enactment of WIS. STAT. § 165.08(1) that gave it any role in the settlement of plaintiff-side civil litigation. The absence of such historical evidence lends further weight to the conclusion that this power resides exclusively in the executive branch.

¶62 Nor can it be denied that the commencement, conduct, and resolution of litigation by the executive branch involves the exercise of significant discretion. Initially, the executive branch must determine whether a violation of law has occurred, whether its "resources are best spent on this violation or another," the likelihood that a civil action will be successful, and in cases brought on behalf of administrative agencies, "whether the particular enforcement action requested best fits the agency's overall policies." *See* **Heckler v. Chaney**, 470 U.S. 821, 831 (1985). Similarly, the decision whether, and on what terms, to settle or discontinue civil enforcement actions requires consideration and balancing of available resources, applicable agency priorities, likelihood of success, and anticipated relief. The separation of powers protects the executive branch's freedom to exercise this discretion within its designated sphere without interference from the other branches. *See* **Gabler**, 376 Wis. 2d 147, ¶32 ("[O]ne branch of the government has no authority to compel a co-ordinate branch to perform functions of judgment and discretion that are lawfully delegated to it by the constitution." (citation omitted)); **Evers**, 412 Wis. 2d 525, ¶15 (quoting **Attorney General ex rel. Taylor v. Brown**, 1 Wis. 422 [*513], 449 [*522] (1853) ("[W]hatever power or duty is expressly given to, or imposed upon the executive department, is altogether free from the interference of the other branches of the government. Especially is this the case, where the subject is committed to the <u>discretion</u> of the chief executive officer, either by the constitution or by the laws.

7

So long as the power is vested in him, it is to be by him exercised, and no other branch of the government can control its exercise.")).

¶63    From these precepts, it is evident that the exercise of settlement authority in civil enforcement actions and actions brought on behalf of agencies that pertain to programs they are charged with administering is a core executive power. Litigation of such actions is a tool of enforcement; enforcement of the law is constitutionally assigned to the executive branch; and the specific authority transferred by WIS. STAT. § 165.08(1)—the power to compromise or discontinue litigation—is an exercise of enforcement discretion that the separation of powers shields from interference by the other branches.

### III.

¶64    In reaching a contrary conclusion, the majority makes two mistakes in its consideration of recent separation of powers case law. First, the majority overstates the significance of *SEIU*, in which our supreme court recognized that the power to settle civil lawsuits can, in some cases, be shared by the legislative and executive branches. The court there rejected a facial challenge to the constitutionality of WIS. STAT. § 165.08(1) after concluding that the statute's transfer of settlement authority to the JFC could be constitutional in certain "cases that implicate an institutional interest of the legislature." *SEIU*, 393 Wis. 2d 38, ¶63. The court specifically identified three categories of cases in which such an interest might be present: (1) cases in which "a legislative official, employee, or body is represented by the attorney general"; (2) those in which "a legislative body is the principal authorizing the attorney general's representation in the first place"; and (3) "cases where spending state money is at issue." *Id.*, ¶71. With respect to the third category, the court identified article VIII, section 2 of the Wisconsin

8

Constitution, which "gives the legislature the general power to spend the state's money by enacting laws," as the wellspring of its institutional interest. *SEIU*, 393 Wis. 2d 38, ¶¶68-69.

¶65 Though the court in *SEIU* concluded that WIS. STAT. § 165.08(1) was capable of being applied constitutionally, it also emphasized the limited nature of that conclusion. The court specifically stated that it "pass[ed] no judgment on the constitutionality of individual applications or categories of applications of" § 165.08(1). *SEIU*, 393 Wis. 2d 38, ¶86. Thus, while the statute is capable of constitutional application, *SEIU* is not, in the majority's words, "dispositive of this appeal." Majority, ¶31 n.17.

¶66 The majority also unduly minimizes *Evers*, our supreme court's most recent separation of powers decision. That case bears greater significance to the analysis of WIS. STAT. § 165.08(1) in this case than the majority suggests. Like the present case, *Evers* involved a separation of powers challenge to a statute that gave the JFC veto power over certain executive branch execution decisions. The statutory provisions at issue in *Evers* concerned a land acquisition program administered by the department of natural resources (DNR). The legislature authorized the DNR to obligate funds for land acquisition projects if they met certain statutory criteria but required the department to notify the JFC and obtain its approval with respect to some acquisitions under the program. *Evers*, 412 Wis. 2d 525, ¶¶3, 6-7.

¶67 Our supreme court held that the JFC review and approval provisions violated the separation of powers because they "authorize[d] the legislative branch to arrogate and impede the executive's core power to execute the law." *Id.*, ¶2. Though the legislature had the core power to determine "how to appropriate the

9

state's funds," and to prescribe the conditions under which projects could receive those funds, it was for the executive branch to determine how "to spend appropriated funds in accordance with the law enacted by the legislature." *Id.*, ¶¶14, 18. To the extent the legislature disagreed with particular spending decisions made by the DNR, it "could take away or limit the discretion of the executive branch to make spending decisions for the Program" by "exercising its lawmaking power with the full participation of the legislature." *Id.*, ¶21. But having conferred power on the executive branch to act in accordance with the law enacted by the legislature, the legislature could not confer on the JFC the power to veto the executive's decisions. *Id.*

¶68 The majority distinguishes *Evers* because it arose in a different factual context, but the analysis that led the court to conclude that the JFC veto provisions violated the separation of powers applies with equal force here. As in *Evers*, 412 Wis. 2d 525, ¶23, "the legislative process has been completed" in this case because the legislature has passed laws designating the attorney general or the department of justice as the executive agency charged with enforcing certain environmental, consumer protection, financial regulatory, and other laws. *See, e.g.*, WIS. STAT. §§ 30.03, 49.485, 165.25(4)(ar), 202.18(1)(a), 220.04(10), 221.1005, 224.06(7), 299.95, 426.104(1)(a), 601.71. It has also enacted legislation directing the department of justice to "prosecute … for the state all actions, civil or criminal, relating to any matter connected with any [state] departments except in those cases where other provision is made." Sec. 165.25(2). It has passed laws specifying the types of relief available in these civil actions, including injunctive relief, monetary forfeitures, fines, restitution, and recovery of the costs of investigation and litigation. *See, e.g.*, WIS. STAT. §§ 30.03, 49.485, 100.18(11)(d), 100.20(6), 202.18(1)(b), 224.06(7), 299.97, 426.301. And it has enacted

legislation directing certain monetary remedies to particular appropriations or purposes. *See, e.g.*, WIS. STAT. §§ 100.18(11)(d) and 100.195(5m)(c) (restitution); WIS. STAT. §§ 20.455(1)(gh), 49.49(6), 93.20, 100.263 (costs of investigation and prosecution); *see also* WIS. CONST. art. X, § 2 (forfeitures).

¶69     In sum, the legislature has, through the exercise of its core power, (1) empowered the attorney general and the department of justice to bring the civil actions at issue here; (2) specified the types of relief available; and (3) directed how and where received settlement funds are to be allocated.  Because, as explained below, the Legislature has not identified an institutional interest that is implicated in either category of cases before us, to the extent it disagrees with how the executive branch is exercising its settlement authority, it "lacks any constitutional authority to reject [these decisions] short of exercising its lawmaking power with the full participation of the legislature." *See Evers*, 412 Wis. 2d 525, ¶21.

## A.

¶70     The Legislature identifies two institutional interests that supposedly bring the exercise of settlement authority in the two categories of cases at issue here within the zone of shared powers.  The first interest, which the majority deems dispositive, derives from the legislature's "power of the purse."  Majority, ¶27.  The Legislature contends that this interest "is implicated whenever the State obtains or spends funds, at least where the amount of money at stake is large."[3]

---

[3] The closest the Legislature comes to articulating what a "large" settlement means in this context is a hypothetical "multimillion-dollar settlement with a largescale landlord" detailed in its brief.  Absent further definition, its supposition that it has an interest in "large" settlements lacks any meaningful limitation.

¶71     That contention sweeps too broadly.  The power of the purse, as described in our constitution and Wisconsin case law, pertains to the spending of state money.  It is grounded primarily in article VIII, section 2 of the Wisconsin Constitution, which provides that "[n]o money shall be paid out of the treasury except in pursuance of an appropriation by law."  The *SEIU* court characterized this power as giving rise to a legislative interest in litigation in which the expenditure of state funds is a possibility.  "[W]here litigation involves requests for the state to pay money to another party, the legislature, in at least some cases, has an institutional interest *in the expenditure of state funds* sufficient to justify the authority to approve certain settlements."  *SEIU*, 393 Wis. 2d 38, ¶69 (emphasis added); *see also id.*, ¶71 ("[I]n cases where *spending state money is at issue*, the legislature has a constitutional institutional interest in at least some cases sufficient to allow it to require legislative agreement with certain litigation outcomes." (emphasis added)).

¶72     As described in *SEIU*, this interest is not sufficient to sustain WIS. STAT. § 165.08(1) in the categories of cases at issue here because, as the majority acknowledges, neither category includes cases in which the state might be required to pay money to a private party.  Majority, ¶28.  The majority attempts to bridge this gap by looking to the legislature's taxing power under article VIII, section 5, which requires it to "provide for an annual tax sufficient to defray the estimated expenses of the state for each year."  But the taxing power is too thin a reed to support the complete transfer of settlement authority that § 165.08(1) effects in the categories of cases at issue.

¶73     Our supreme court has described the constitutional power to levy taxes as "contemplat[ing] legislative action to determine the sufficiency of income each year to cover the regular expenses" of the state.  *State ex rel. Owen v.*

*Donald*, 160 Wis. 21, 122, 151 N.W. 331 (1915). The majority construes this power to confer legislative branch oversight of all sources of income to the state and then concludes that this oversight obligation supports the transfer of settlement authority in WIS. STAT. § 165.08(1). Majority, ¶31. I disagree. The taxing power "was evidently intended by the framers of the constitution to be very closely fenced about." *Donald*, 160 Wis. at 133. It neither requires nor justifies legislative control over whether to accept, reject, or renegotiate the settlements at issue here. The institutional interest that emanates from the taxing power is not in controlling all sources of income to the state; it is in knowing—or being able to estimate—expenses and revenues in order to determine what, if any, taxes need to be levied in a given year. That interest in monitoring amounts received through settlements does not require that the JFC have unilateral control over their terms.

¶74 The majority also contends that the JFC should have a role in determining where settlement funds should be allocated. Majority, ¶¶30, 32. This fails to recognize that the legislature has already enacted laws directing how and where receipts are to be allocated, which the executive branch carries out. *See Evers*, 412 Wis. 2d 525, ¶23 ("Once the legislature passes a bill that is signed by the governor and becomes law, 'the legislature plays no part in enforcing our statutes.'" (citation omitted)).

¶75 The taxing power is ill suited as support for WIS. STAT. § 165.08(1) for a second reason. Taxation is a means of generating revenue and must, per the constitution, be uniform. *See* WIS. CONST. art. VIII, § 1. That is, "the method or mode of taxing real property must be applied uniformly to all classes of property within the tax district." *U.S. Oil Co. v. City of Milwaukee*, 2011 WI App 4, ¶23, 331 Wis. 2d 407, 794 N.W.2d 904 (2010). Litigation resolution, in contrast, is a means of enforcing the law, not generating revenue to fund the government. In the

usual case, the terms of a settlement are negotiated by the parties based on, among other things, the specific facts, claims, and defenses at issue. A private party's liability to the state turns not on status or other criteria capable of uniform application, but instead on the violations of law and resulting injuries and damages in the case. Discretionary decisions about what fines, forfeitures, and money damages are owing to the state in settlements are not based on efforts to balance the budget; they are made to redress violations of law and compensate for injuries attributable to the private party's unlawful conduct.

**B.**

¶76 Because the legislature's spending and taxing powers do not give rise to an institutional interest sufficient to sustain the application of WIS. STAT. § 165.08(1) in either category of cases before us, I must consider the other interest the Legislature advances, that of "establishing policy for the State." The Legislature contends that settlements in the categories of cases before us may implicate this interest because they "may include provisions requiring the defendant to act (or refrain from acting) in a manner not otherwise required under state law."

¶77 To be sure, "[p]olicy decisions are left to the legislature." *Milwaukee J. Sentinel v. City of Milwaukee*, 2012 WI 65, ¶37, 341 Wis. 2d 607, 815 N.W.2d 367. The legislature effectuates its interest as policymaker for the state by exercising its core power of passing laws. *Evers*, 412 Wis. 2d 525, ¶34 ("Article IV, Section 1 of the Wisconsin Constitution vests broad authority in the legislature to pass laws reflecting the legislature's policy choices."). Channeling policymaking through "[t]he procedural requirements of bicameralism and presentment" serves important interests: it "temper[s] the expansive authority

14

vested in the legislative branch to make policy decisions for the state" and "insure[s] mature and deliberate consideration of, and … prevent[s] precipitate action on, proposed legislative measures." *Evers*, 412 Wis. 2d 525, ¶13 (citation omitted). These requirements also serve the "fundamental purpose" of "restrict[ing] the operation of the legislative power to those policies which meet the approval of three constituencies, or a supermajority of two." *Consumer Energy Council of Am. v. Federal Energy Regul. Comm'n*, 673 F.2d 425, 464 (D.C. Cir. 1982).

¶78 Once the legislature's policy preferences have been enacted into law, it is "[t]he executive branch's role … to effectuate [those] policies." *Evers*, 412 Wis. 2d 525, ¶15. And in doing so, the executive branch has discretion to decide how best to enforce those laws and carry out the legislature's policy choices. *Id.*, ¶16 ("In executing the law, the executive branch must make decisions about how to enforce and effectuate the laws."). That is what the executive branch does when it crafts settlements of individual actions in the categories at issue here. As the circuit court recognized, the terms under which those actions are compromised or discontinued "bind only the parties and do not establish precedent." They do not impose generally applicable policies, but instead reflect consideration of the specific facts and injuries at issue and what remedies are lawful and appropriate to address the specific harms caused by the defendant. *Evers* confirms that it is the executive branch's role to engage in that analysis because it is part and parcel of its core power of executing the law. *Id.* Litigation settlement authority in civil enforcement actions and actions that pertain to programs that administrative agencies are charged with administering does not implicate the legislature's institutional interest in policymaking.

15

## IV.

¶79    Even if the power to settle civil actions in the two categories before us was a shared power, WIS. STAT. § 165.08(1) would still be unconstitutional. "The separation of powers doctrine … places significant limitations on the legislature's exercise of authority within zones of shared power." *E.B. v. State*, 111 Wis. 2d 175, 184, 330 N.W.2d 584 (1983). Its exercise of a shared power "is constitutional only if it does not unduly burden or substantially interfere with" another branch. *Flynn v. DOA*, 216 Wis. 2d 521, 547, 576 N.W.2d 245 (1998). In applying this standard, "[t]he focus … is on whether one branch's exercise of power has impermissibly intruded on the constitutional power of the other branch." *Id.* (citation omitted); *see also E.B.*, 111 Wis. 2d at 184-85 (legislature may not "withdraw [another branch's] power or so limit and circumscribe it as to defeat the constitutional purpose." (citation omitted)).[4]

¶80    As applied to the categories of cases at issue, WIS. STAT. § 165.08(1) unduly burdens and substantially interferes with the executive branch. Under the statute, the branches do not "share" settlement power in any meaningful sense of that word. Instead, the requirement of JFC approval "ultimately permits the

---

[4] The majority errs in construing footnote 22 in Justice Hagedorn's majority opinion in *SEIU* to foreclose application of the "undue burden or substantial interference" standard in this case. Majority, ¶¶37, 39. In that footnote, the court wrote that "[w]here the legislature has appropriate institutional interests, legislative exercise of this shared power in at least some cases does not unduly burden or substantially interfere with the attorney general's executive authority." *Service Emps. Int'l Union, Loc. 1 v. Vos*, 2020 WI 67, ¶72 n.22, 393 Wis. 2d 38, 946 N.W.2d 35. I do not construe this statement to mean that when a legislative interest is present, the legislature's exclusive exercise of the power at issue will always be constitutional. If that were true—if the legislature could constitutionally assume total control over the exercise of a shared power anytime its exercise implicated a legislative interest—then the "undue burden or substantial interference" standard would be rendered a nullity. That outcome cannot be squared with *SEIU*'s recognition of the standard, *see id.*, ¶35, and I do not believe the court intended to relegate to a footnote such a substantial alteration of our separation of powers jurisprudence.

members of the JFC to serve as gatekeeper to the exercise of a core executive function. Effectively, JFC members make the [settlement] decision—not the executive branch." *See Evers*, 412 Wis. 2d 525, ¶24. The exclusive and unreviewable control the statute confers upon the JFC leaves the executive branch with no ability to override its decisions, thereby undermining the executive branch's constitutionally-assigned role as enforcer of the law.

****

¶81 The circuit court was correct in declaring WIS. STAT. § 165.08(1) unconstitutional as applied in these categories of cases. For the foregoing reasons, I respectfully dissent from the majority's decision to reverse its orders.

17